Filed
12 April 25 P4:09
Gary Fitzsimmons
District Clerk
Dallas District

1 CIT ATTY

CAUSE NO. ___DC-12-04607___

| | | |
|---|---|---|
| LSF7 NPL V TRUST and<br>LSF7 BERMUDA NPL V TRUST, | §<br>§<br>§ | IN THE DISTRICT COURT OF |
| Plaintiffs, | §<br>§ | |
| vs. | §<br>§<br>§ | DALLAS COUNTY, TEXAS |
| FLAGSTAR BANK, FSB | §<br>§<br>§ | |
| Defendant. | § | J-191ST JUDICIAL DISTRICT |

EXHIBIT
C-1

## PLAINTIFF'S ORIGINAL PETITION

Plaintiffs LSF7 NPL V Trust and LSF7 Bermuda NPL V Trust ("LSF Trusts" or "Plaintiffs")

file their Original Petition against Defendant Flagstar Bank, FSB ("Flagstar"), and allege as follows:

### I.

### DISCOVERY CONTROL PLAN

1.      Plaintiffs request that discovery be conducted at Level 3 pursuant to the Texas Rules

of Civil Procedure 190.4.

### II.

### THE PARTIES

2.      Plaintiffs LSF7 NPL V Trust and LSF7 Bermuda NPL V Trust are Delaware statutory

trusts.

3.      Defendant Flagstar Bank, FSB is a federally chartered savings bank organized

pursuant to the laws of the United States with its principal place of business located at 5151

Corporate Drive, Troy, Michigan 48098. Upon information and belief, Flagstar's principal place of

business in Texas is 8140 Walnut Hill Lane, Dallas, Texas 75231.

SCANNED & FILED
Date:_____

## III.

### JURISDICTION & VENUE

4.      This Court has jurisdiction over this matter as the amount in controversy exceeds its minimum jurisdictional limits.

5.      Venue is proper in Dallas County, Texas, pursuant to Civ. Prac. & Rem. Code § 15.002(a)(1) because all or part of the events or omissions giving rise to this lawsuit occurred in Dallas County, Texas. Venue is also proper in Dallas County, Texas, pursuant to Civ. Prac. & Rem. Code § 15.002(a)(3) because, upon information and belief, defendant's principal office in this state is in Dallas County, Texas.

### IV.

### FACTUAL BACKGROUND

6.      On or about November 1, 2010, LSF7 Mortgage Acquisitions II, LLC ("LSF") and Flagstar executed a Mortgage Loan Purchase and Warranties Agreement (the "Agreement"), whereby Defendant agreed to sell residential mortgage loans to LSF. Specifically, under the terms of the Agreement, Flagstar agreed to sell certain fixed and adjustable-rate, residential mortgage loans and REO Property (collectively, the "Mortgage Loans") to LSF on a servicing released basis. A true and correct copy of the Agreement is attached as Exhibit A and incorporated herein by reference.

7.      Under the terms of the Agreement, Flagstar promised to sell to LSF certain Mortgage Loans identified in the Agreement. In turn, LSF agreed to pay Flagstar for those Mortgage Loans based on a formula contained therein in Section 2.01.

8.      With respect to Flagstar's business, Flagstar made specific representations and warranties. For instance, in Section 3.01 (d), Flagstar represented and warranted

2

(d)    No Litigation:  There is no litigation, suit, proceeding or investigation *pending or to the actual knowledge of the Seller, threatened, or any order or decree* outstanding, with respect to Seller which, either in one instance or in the aggregate, is reasonably likely to have a material adverse effect on the sale of the Mortgage Loans, the execution, delivery, performance or enforceability of this Agreement, or which is reasonably likely to have a material adverse effect on the financial condition of Seller;

9.    With respect to each of the Mortgage Loans sold by Flagstar to LSF, Flagstar made specific representations and warranties.  For instance, in Section 3.02, Flagstar represented and warranted:

(a)    Mortgage Loan Schedule:  The information set forth in the Mortgage Loan Schedule is true and correct in all material respects as of the Cut-off Date;

(b)    Valid Mortgage:  The Mortgage creates a valid, subsisting and enforceable first lien or a first priority ownership interest in the Mortgaged Property, including all improvements on the Mortgaged Property, free and clear of all adverse claims, liens and encumbrances having priority over the first lien of the Mortgage, subject only to (1) the lien of current real property taxes and assessments not yet due and payable, (2) covenants, conditions and restrictions, rights of way, easements and other matters of the public record as of the date of recording which are acceptable to mortgage lending institutions generally and either (A) which are referred to in the title insurance policy, or (B) which do not adversely affect the value of the Mortgaged Property, and (3) other matters to which like properties are commonly subject which do not individually or in the aggregate materially interfere with the benefits of the security intended to be provided by the Mortgage or the use, enjoyment, value or *marketability of the related Mortgaged Property;*

. . . . . .

(d)    Taxes, HOA Fees, and Assessments:  As of the Closing Date, all taxes and any home owners association fees ("HOA Fees") which previously became due and owing have been paid, or escrow funds have been established in an amount sufficient to pay for any such taxes or HOA Fees which remain unpaid and which have been assessed but not yet due and payable;

(e)    No Defenses:  The Mortgage Note and the Mortgage are not subject to any right of rescission, set-off, counterclaim or defense, including, without limitation, the defense of usury, nor will the operation of any of the terms of the Mortgage Note or the Mortgage, or the exercise of any right thereunder, render the Mortgage Note or Mortgage unenforceable, in whole or in part, or subject to any right of rescission, set-off, counterclaim or defense, including the defense of usury;

3

(f) <u>No Release of Mortgage</u>: The Mortgage has not been satisfied, canceled or subordinated, in whole or in part, or rescinded, and the Mortgaged Property has not been released from the lien of the Mortgage, in whole or in part, nor gas any instrument been executed that would effect any such release, cancellation, subordination or rescission;

* * * * * *

(h) <u>Servicing</u>: For the time period the Seller owned such Mortgage Loan, the servicing and collection practices with respect to each Mortgage Note and Mortgage have been in al respects legal and proper and in accordance with the terms of the Mortgage Note or Mortgage;

(i) <u>Private Mortgage Insurance</u>: With respect to any Mortgage Loan subject to a PMI Policy as indicated on the Mortgage Loan Schedule, all provisions of such PMI Policy have been and are being complied with, such policy is in full force and effect, and all premiums due thereunder have been paid. Any Mortgage Loan subject to a PMI Policy obligates the Mortgagor thereunder to maintain the PMI Policy and to pay all premiums and charges in connection therewith. The Mortgage Interest Rate for any such Mortgage Loan as set forth on the Mortgage Loan Schedule is net of such insurance premium;

(j) <u>Original Terms Unmodified</u>: The terms of the related Mortgage Note and related Mortgage have not been impaired, waived, altered or modified in any respect, from the date of origination, except by written instruments which (a) have been recorded in the applicable public recording office, if required by law or otherwise in accordance with the Seller's loan modification guidelines, and (b) which have been delivered to the Purchaser;

(k) <u>Litigation</u>: Other than with respect to any foreclosure, bankruptcy, eviction or similar proceeding, or as otherwise disclosed in the Mortgage Loan Schedule, as of the Cut-Off Date, Seller has not received notice of any material litigation with respect to the Mortgage Loans.

10.   In addition to making specific representations about its business and its loans to LSF,

Flagstar also agreed in Section 3.03 of the Agreement to repurchase Mortgage Loans that were in

breach of any of the representations and warranties made by Flagstar. For instance, Flagstar agreed

Section 3.02 <u>Repurchase</u>.

It is understood and agreed that the representations and warranties set forth in Sections 3.01 and 3.02 shall survive the sale of the Mortgage Loans and shall inure to the benefit of the Purchaser, notwithstanding any restrictive or qualified endorsement on any Mortgage Note or Assignment of Mortgage (except with respect to each MERS Designated Mortgage Loan) or the examination, or lack of

examination, of any Mortgage File for a period of six (6) months after Closing Date provided, however, that the representations and warranties set forth in Section 3.02(i) shall survive for a period of two (2) years after Closing Date. Upon discovery of a breach of any of the foregoing representations and warranties which materially and adversely affects the value of a Mortgage Loan or the Mortgage Loans (or REO Property, as applicable), the party discovering such breach shall give prompt written notice to the other. Seller shall have a period of sixty (60) days from the earlier of its discovery or its receipt of notice of any such breach within which to correct or cure such breach. Seller hereby covenants and agrees that if any such breach is not connected or cured within such sixty (60) day period, the Seller shall, not late than sixty (60) days following the end of the sixty (60) day cure period, repurchase such Mortgage Loan (or REO Property, as applicable) at the Repurchase Price.

In connection with any repurchase of a Mortgage Loan hereunder by the Seller and upon receipt of the Repurchase Price, the Purchaser shall, subject to any requirements under RESPA, immediately transfer the servicing of such Mortgage Loan to Seller or its designee, which transfer shall include transfer of the Servicing File and Mortgage File and any other servicing records in Purchaser's possession and control and transfer of any positive escrow account. Further, the Purchaser agrees to execute any documents as reasonably required by the Seller to convey proper title of the Mortgage Loan, including, but not limited to, an assignment of mortgage. Seller shall pay all reasonable documented out-of-pocket costs and expenses in connection with any such repurchase of a Mortgage Loan, including, without limitation, the costs and expenses to prepare any conveyance documents and the costs of recording the same.

11.     The deadline for Flagstar to have supplied all material information about the individual Mortgage Loans to LSF was the Cut-Off Date, or September 30, 2010.

12.     After closing the loan purchase transaction with Flagstar, LSF assigned all of its rights, title and interest in the residential mortgage loans it purchased from Flagstar to LSF7 Bermuda NPL V Trust. LSF assigned all of its rights, title and interest in the real estate owned ("REO") properties it purchased from Flagstar to LSF7 NPL V Trust. Accordingly, as of November 12, 2010, LSF had assigned all of its rights, title and interest in both the residential mortgage loans and the real estate owned ("REO") properties (collectively, the "Mortgage Loans") acquired from Flagstar under the Agreement to LSF7 NPL V Trust and LSF7 Bermuda NPL V Trust.

13.     After receiving the Mortgage Loans subject to the Agreement, the LSF Trusts discovered through their servicer, Vericrest Financial, Inc. ("Vericrest"), that several of the

5

Mortgage Loans were in breach of the representations and warranties contained in Section 3.02 of the Agreement. On or about May 9, 2011, Flagstar was notified of the breaches and given an opportunity to cure. Flagstar failed and refused to cure. Then, on or about August 30, 2011, the LSF Trusts and Vericrest made another demand on Flagstar to cure the outstanding breaches and repurchase the affected loans, which it failed to do. As a result, the LSF Trusts remain the holder of more than 170 Mortgage Loans purchased from Flagstar that do not comply with Section 3.02 of the Agreement.

| # | Vericrest ID | Nature of Breach, among others |
|---|---|---|
| 1 | XX00846546 | 3.02(d) |
| 2 | XX00846710 | 3.02(d) |
| 3 | XX00846736 | 3.02(i) |
| 4 | XX00846843 | 3.02(d) |
| 5 | XX00847197 | 3.02(d) |
| 6 | XX00847270 | 3.02(d) |
| 7 | XX00847296 | 3.02(d) |
| 8 | XX00847395 | 3.02(d) |
| 9 | XX00847627 | 3.02(d) |
| 10 | XX00847742 | 3.02(d) |
| 11 | XX00847759 | 3.02(d) |
| 12 | XX00847833 | 3.02(d) |
| 13 | XX00847874 | 3.02(d) |
| 14 | XX00848054 | 3.02(d) |
| 15 | XX00848153 | 3.02(d) |
| 16 | XX00848211 | 3.02(d) |
| 17 | XX00848526 | 3.02(d) |
| 18 | XX00848856 | 3.02(d) |

| 19 | XX00848963 | 3.02(i) |
| 20 | XX00848971 | 3.02(d) |
| 21 | XX00849086 | 3.02(d) |
| 22 | XX00849110 | 3.02(d) |
| 23 | XX00849201 | 3.02(d) |
| 24 | XX00849243 | 3.02(d) |
| 25 | XX00849417 | 3.02(d) |
| 26 | XX00849748 | 3.02(d) |
| 27 | XX00849821 | 3.02(i) |
| 28 | XX00849888 | 3.02(i) |
| 29 | XX00849896 | 3.02(d) |
| 30 | XX00849987 | 3.02(d) |
| 31 | XX00849995 | 3.02(d) |
| 32 | XX00850035 | 3.02(d) |
| 33 | XX00850126 | 3.02(d) |
| 34 | XX00850399 | 3.02(d) |
| 35 | XX00850456 | 3.02(d) |
| 36 | XX00850464 | 3.02(d) |
| 37 | XX00850498 | 3.02(d) |
| 38 | XX00850712 | 3.02(i) |
| 39 | XX00850746 | 3.02(d) |
| 40 | XX00850928 | 3.02(d) |
| 41 | XX00851108 | 3.02(i) |
| 42 | XX00851157 | 3.02(d) |
| 43 | XX00851165 | 3.02(d) |
| 44 | XX00851256 | 3.02(d) |
| 45 | XX00851298 | 3.02(d) |
| 46 | XX00851314 | 3.02(d) |

| 47 | XX00851348 | 3.02(d) |
| 48 | XX00851389 | 3.02(d) |
| 49 | XX00851611 | 3.02(d) |
| 50 | XX00851702 | 3.02(i) |
| 51 | XX00851710 | 3.02(d) |
| 52 | XX00851793 | 3.02(d) |
| 53 | XX00851868 | 3.02(d) |
| 54 | XX00851967 | 3.02(i) |
| 55 | XX00852163 | 3.02(i) |
| 56 | XX00852270 | 3.02(d) |
| 57 | XX00852288 | 3.02(d) |
| 58 | XX00852379 | 3.02(d) |
| 59 | XX00852395 | 3.02(d) |
| 60 | XX00852403 | 3.02(d) |
| 61 | XX00852551 | 3.02(d) |
| 62 | XX00852833 | 3.02(d) |
| 63 | XX00852858 | 3.02(d) |
| 64 | XX00852916 | 3.02(d) |
| 65 | XX00852999 | 3.02(d) |
| 66 | XX00853229 | 3.02(i) |
| 67 | XX00853351 | 3.02(d) |
| 68 | XX00853419 | 3.02(d) |
| 69 | XX00853443 | 3.02(i) |
| 70 | XX00853757 | 3.02(d) |
| 71 | XX00853872 | 3.02(d) |
| 72 | XX00853880 | 3.02(i) |
| 73 | XX00853948 | 3.02(d) |
| 74 | XX00854045 | 3.02(d) |

| 75 | XX00854078 | 3.02(d) |
|---|---|---|
| 76 | XX00854128 | 3.02(d) |
| 77 | XX00854144 | 3.02(d) |
| 78 | XX00854201 | 3.02(d) |
| 79 | XX00854300 | 3.02(d) |
| 80 | XX00854375 | 3.02(d) |
| 81 | XX00854482 | 3.02(d) |
| 82 | XX00854714 | 3.02(d) |
| 83 | XX00854946 | 3.02(d) |
| 84 | XX00855067 | 3.02(d) |
| 85 | XX00855083 | 3.02(d) |
| 86 | XX00855117 | 3.02(d) |
| 87 | XX00855190 | 3.02(d) |
| 88 | XX00855315 | 3.02(d) |
| 89 | XX00855356 | 3.02(d) |
| 90 | XX00855372 | 3.02(d) |
| 91 | XX00855406 | 3.02(d) |
| 92 | XX00855471 | 3.02(d) |
| 93 | XX00855489 | 3.02(d) |
| 94 | XX00855539 | 3.02(d) |
| 95 | XX00855547 | 3.02(d) |
| 96 | XX00855570 | 3.02(d) |
| 97 | XX00855646 | 3.02(d) |
| 98 | XX00855760 | 3.02(d) |
| 99 | XX00855869 | 3.02(d) |
| 100 | XX00855893 | 3.02(d) |
| 101 | XX00855919 | 3.02(d) |
| 102 | XX00855935 | 3.02(d) |

| 103 | XX00855950 | 3.02(d) |
| 104 | XX00856081 | 3.02(d) |
| 105 | XX00856230 | 3.02(d) |
| 106 | XX00856271 | 3.02(d) |
| 107 | XX00856297 | 3.02(d) |
| 108 | XX00856438 | 3.02(d) |
| 109 | XX00856479 | 3.02(d) |
| 110 | XX00856552 | 3.02(d) |
| 111 | XX00856602 | 3.02(d) |
| 112 | XX00856685 | 3.02(d) |
| 113 | XX00856834 | 3.02(d) |
| 114 | XX00856875 | 3.02(d) |
| 115 | XX00856909 | 3.02(i) |
| 116 | XX00857246 | 3.02(d) |
| 117 | XX00857261 | 3.02(d) |
| 118 | XX00857303 | 3.02(d) |
| 119 | XX00857345 | 3.02(d) |
| 120 | XX00857477 | 3.02(d) |
| 121 | XX00857543 | 3.02(d) |
| 122 | XX00857576 | 3.02(d) |
| 123 | XX00857659 | 3.02(d) |
| 124 | XX00857675 | 3.02(i) |
| 125 | XX00857741 | 3.02(d) |
| 126 | XX00857790 | 3.02(i) |
| 127 | XX00857907 | 3.02(d) |
| 128 | XX00857923 | 3.02(d) |
| 129 | XX00858186 | 3.02(d) |
| 130 | XX00858319 | 3.02(d) |

| | | |
|---|---|---|
| 131 | XX00858392 | 3.02(d) |
| 132 | XX00858517 | 3.02(i) |
| 133 | XX00858632 | 3.02(d) |
| 134 | XX00858673 | 3.02(d) |
| 135 | XX00858780 | 3.02(i) |
| 136 | XX00859069 | 3.02(d) |
| 137 | XX00859093 | 3.02(d) |
| 138 | XX00859135 | 3.02(d) |
| 139 | XX00859200 | 3.02(d) |
| 140 | XX00859242 | 3.02(d) |
| 141 | XX00859309 | 3.02(d) |
| 142 | XX00859317 | 3.02(d) |
| 143 | XX00859416 | 3.02(d) |
| 144 | XX00859440 | 3.02(d) |
| 145 | XX00859473 | 3.02(i) |
| 146 | XX00859556 | 3.02(d) |
| 147 | XX00859564 | 3.02(d) |
| 148 | XX00859630 | 3.02(i) |
| 149 | XX00859671 | 3.02(d) |
| 150 | XX00859697 | 3.02(i) |
| 151 | XX00859804 | 3.02(d) |
| 152 | XX00859812 | 3.02(d) |
| 153 | XX00859846 | 3.02(d) |
| 154 | XX00860398 | 3.02(d) |
| 155 | XX00859101 | 3.02(d) |
| 156 | XX00851181 | 3.02(i) |
| 157 | XX00859184 | 3.02(d) |
| 158 | XX00853112 | 3.02(c) & (k) |

| 159 | XX00849615 | 3.02(a) & (b) |
| 160 | XX00851777 | 3.02 (b) |
| 161 | XX00852825 | 3.02(a) & (b) |
| 162 | XX00851074 | 3.02(a) & (f) |
| 163 | XX00849532 | 3.02(b), (e) & (k) |
| 164 | XX00857022 | 3.02(a) & (b) |
| 165 | XX00858517 | 3.02(i) |
| 166 | XX00852684 | 3.02(e),(h) & (k) |
| 167 | XX00850415 | 3.02(a),(e),(h),(j) & (k) |
| 168 | XX00849862 | 3.02(a),(e),(h),(j) & (k) |
| 169 | XX00859754 | 3.02(e) & (k) |
| 170 | XX00847452 | 3.02(b) |
| 171 | XX00857154 | 3.02(e) & (k) |
| 172 | XX00847445 | 3.02(b) |
| 173 | XX00853104 | 3.02(e) & (f) |

14. The LSF Trusts, through their servicer, Vericrest, have given Flagstar notice of these breaches beginning on or about May 9, 2011. The LSF Trusts and Vericrest have had follow-up communications with Flagstar about the deficiencies in the Mortgage Loans and the nature of the breaches including another letter dated August 30, 2011. This letter was then followed by numerous additional communications in which Flagstar refused to cure the deficiencies. Indeed, Flagstar was even provided with schedules detailing the breaches. Nonetheless, Flagstar has failed and continues to refuse to fulfill its obligations under the Agreement. Therefore, the LSF Trusts are compelled to bring this action to enforce their rights under the Agreement and common law.

15. In addition, there are additional Mortgage Loans that Flagstar has previously agreed to repurchase, but has yet to do so. Accordingly, the LSF Trusts bring this action to compel (and/or

recover for) the repurchase of the Mortgage Loans that Flagstar has previously agreed to repurchase but for which it has failed or refused to do.

16.    All conditions precedent to the bringing of this lawsuit and any causes of action hereunder have been met, or have been waived.

## V.

## CAUSES OF ACTION

### Count One- Breach of Contract

17.    Plaintiffs reallege and incorporate the allegations of paragraphs 1 through 16 above as if fully set forth herein.

18.    LSF and Defendant executed the Agreement on or about November 1, 2010.

19.    LSF and Defendant are parties to a valid, enforceable contract, to wit, the Agreement.

20.    Under the terms of the Agreement, LSF and Defendant made several valid and enforceable mutual agreements.

21.    LSF performed its obligations under the Agreement by, *inter alia*, purchasing Mortgage Loans from Defendant pursuant to the terms and provisions of the Agreement.

22.    LSF properly and validly assigned its rights, title and interest in both the residential mortgage loans and the REO properties acquired from Flagstar under the Agreement to LSF7 NPL V Trust and LSF7 Bermuda NPL V Trust.

23.    Plaintiffs gave Defendant ample, and sufficient, opportunity to cure its default and Defendant has continually refused to abide by the plain language of the Agreement by, *inter alia*, repurchasing certain loans and remitting certain sums as required under the Agreement.

24.    As a direct and proximate result of Defendant's material breaches of the Agreement, Plaintiffs have suffered injury and substantial monetary damages, including without limitations the

13

total agreed repurchase price and total remittance due as to the identified Mortgage Loans, for which it is entitled to be compensated.

## Count Two- Breach of Warranty

25.     Plaintiffs reallege and incorporate the allegations of paragraphs 1 through 24 above as if fully set forth herein.

26.     To induce LSF to purchase the Mortgage Loans, Defendant made the representations and warranties contained in Section 3.02 of the Agreement concerning their quality and characteristics. Those representations formed a material part of the basis of the bargain between the parties. As described herein, Defendant breached those representations and warranties.

27.     As a direct and proximate result of Defendant's breaches of warranty, Plaintiffs have suffered injury and substantial monetary damages, including without limitation, the total agreed repurchase price and the remittance due, for which they are entitled to be compensated.

## VI.

## ATTORNEYS' FEES

28.     As a result of Defendant's conduct, Plaintiffs have been required to retain the services of Lubel Voyles LLP and have agreed to pay Lubel Voyles LLP a reasonable fee.

29.     Pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code, Plaintiffs are entitled to and seeks to recover their reasonable attorneys' fees and court costs incurred in prosecuting this action. Namely, Plaintiffs have presented their claim to Defendant. Plaintiffs have given Defendant an opportunity to pay the proper amount due, exclusive of interest, attorneys' fees and interest. Defendant refused and has forced Plaintiffs to hire the undersigned law firm to pursue this contract claim on their behalf.

## VII.

14

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that Defendant be cited to answer and appear and that,

upon final hearing, Plaintiffs have judgment against Defendant for the following:

a.   All of the damages, actual, consequential and special, to which it proves entitlement at trial;

b.   Reasonable attorneys' fees and court costs;

c.   Pre-judgment and post-judgment interest on all the foregoing sums at the highest respective legal rates; and

d.   Any other relief to which Plaintiff may be entitled.


Respectfully submitted,

**Lubel Voyles LLP**


By:  /s/: Adam Q. Voyles
    Adam Q. Voyles
    Texas State Bar No.: 24003121
    *5020 Montrose Blvd., Suite 800*
    Houston, Texas 77006
    Telephone No.: (713) 284-5200
    Facsimile No.: (713) 284-5250
    Email: adam@lubelvoyles.com
**ATTORNEY FOR PLAINTIFF,**
**LSF7 NPL V TRUST and LSF7 BERMUDA NPL**
**V TRUST**

15

LSF7 MORTGAGE ACQUISTIONS II, LLC,

Purchaser,

and

FLAGSTAR BANK, FSB

Seller

MORTGAGE LOAN PURCHASE AND WARRANTIES AGREEMENT

Dated as of November 1, 2010



EXHIBIT A

TABLE OF CONTENTS

<u>Page</u>

ARTICLE I

DEFINITIONS

Section 1.01    Defined Terms ...................................................................................1

ARTICLE II

INTERIM SERVICING OF MORTGAGE LOANS; RECORD TITLE AND POSSESSION OF
MORTGAGE FILES; BOOKS AND RECORDS; DELIVERY OF MORTGAGE LOAN
DOCUMENTS

Section 2.01    Agreement to Purchase ......................................................................5
Section 2.02    Purchase Price....................................................................................5
Section 2.03    Interim Servicing of Mortgage Loans................................................5
Section 2.04    Record Title and Possession of Mortgage Files.................................9
Section 2.05    Books and Records .............................................................................6
Section 2.06    Delivery of Documents .......................................................................6
Section 2.07    Servicing of Mortgage Loans After Servicing Transfer Date.............7

ARTICLE III

REPRESENTATIONS AND WARRANTIES OF THE SELLER; REPURCHASE; REVIEW
OF MORTGAGE LOANS

Section 3.01    Representations and Warranties of the Seller ....................................9
Section 3.02    Representations and Warranties as to Individual Mortgage Loans ...................11
Section 3.03    Repurchase.........................................................................................13
Section 3.04    Representations and Warranties of Purchaser....................................13

ARTICLE IV

MISCELLANEOUS PROVISIONS

Section 4.01    Amendment.........................................................................................15
Section 4.02    Governing Law ...................................................................................15
Section 4.03    Notices ...............................................................................................15
Section 4.04    Severability of Provisions ..................................................................16
Section 4.05    Exhibits ..............................................................................................16
Section 4.06    General Interpretive Principles ..........................................................16
Section 4.07    Reproduction of Documents ..............................................................17
Section 4.08    Confidentiality of Information............................................................17

Section 4.09    No Assignment by Purchaser...................................................................17
Section 4.10    Execution:  Successors and Assigns .......................................................18
Section 4.11    Entire Agreement...................................................................................18
Section 4.12    Documents Mutually Drafted ................................................................18
Section 4.13    Closing ..................................................................................................18
Section 4.14    Costs.....................................................................................................16

EXHIBITS

A    Reserved
B    Mortgage Loan Schedule
C    Form of Assignment and Conveyance
D    Lost Note Affidavit
E    Mortgage Loan Schedule Fields
F    Form of Power of Attorney
G    Form Interim Servicing Agreement
H    REO File

This is a Mortgage Loan Purchase and Warranties Agreement, dated as of November 1, 2010, and is executed by LSF7 Mortgage Acquisitions II, LLC (the "Purchaser") and Flagstar Bank, FSB (the "Seller").

## W I T N E S S E T H:

WHEREAS, Seller desires to sell to the Purchaser, and the Purchaser desires to purchase from Seller, certain fixed and adjustable-rate, residential mortgage loans and REO Property, as applicable (the "Mortgage Loans"), on a servicing released basis, to be delivered as whole loans as provided herein; and

WHEREAS, the Purchaser and the Seller wish to prescribe the representations and warranties of the parties with respect to themselves and with respect to the Mortgage Loans and the manner of conveyance of the Mortgage Loans sold and purchased hereunder.

NOW, THEREFORE, in consideration of the mutual agreements hereinafter set forth, and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the Purchaser and the Seller agree as follows:

## ARTICLE I

## DEFINITIONS

Section 1.01   Defined Terms.

Whenever used in this Agreement, the following words and phrases shall have the meanings specified in this Article, unless the context requires otherwise:

Agreement:  This Mortgage Loan Purchase and Warranties Agreement including all exhibits hereto, amendments hereof and supplements hereto.

Assignment and Conveyance:  An assignment and conveyance agreement in the form of Exhibit C hereto.

Assignment of Mortgage:  An assignment of the Mortgage, notice of transfer or equivalent instrument, in recordable form, sufficient under the laws of the jurisdiction wherein the related Mortgaged Property is located to reflect of record the sale or transfer of the Mortgage Loan.

Business Day:  Any day other than:  (i) a Saturday or Sunday, or (ii) a legal holiday in the State of New York, or (iii) a day on which banks in the State of New York are authorized or obligated by law or executive order to be closed.

Closing Date:  A mutually agreed upon date occurring no later than November 12, 2010.

<u>Cut-off Date</u>:  September 30, 2010.

<u>Due Date</u>:   The day of the month on which the Monthly Payment is due on a Mortgage Loan, exclusive of any days of grace.

<u>Escrow Payments</u>:  With respect to any Mortgage Loan, the amounts constituting ground rents, taxes, assessments, water rates, sewer rents, municipal charges, mortgage insurance premiums, fire and hazard insurance premiums, condominium charges, and any other payments required to be escrowed by the Mortgagor with the mortgagee pursuant to the Mortgage or any other document.

<u>Interim Servicer</u>: Flagstar Bank, FSB.

<u>Interim Servicing Fee</u>:  With respect to each Mortgage Loan, $10 per Mortgage Loan per month.

<u>Interim Servicing Period</u>: The period during which the Interim Servicer shall service such Mortgage Loan in accordance with the provisions of this Agreement, commencing on the Cut-off Date and ending on the Servicing Transfer Date.

<u>MERS</u>:  Mortgage Electronic Registration Systems, Inc., a Delaware corporation, or any successor in interest thereto.

<u>MERS Designated Mortgage Loan</u>:  Mortgage Loans for which Seller designated or will designate MERS as, and has taken or will take such action as is necessary to cause MERS to be, the mortgagee of record, as nominee for the applicable Seller, in accordance with MERS Procedure Manual.

<u>MERS Procedure Manual</u>:   The MERS Procedures Manual, as it may be amended, supplemented or otherwise modified from time to time.

<u>Monthly Payment</u>:  The scheduled monthly payment of principal and interest on a Mortgage Loan which is payable by a Mortgagor under the related Mortgage Note.

<u>Mortgage</u>:  The mortgage, deed of trust or other instrument securing a Mortgage Note which creates a lien on an unsubordinated estate in fee simple in real property securing the Mortgage Note; or in the case of real property located in jurisdictions in which the use of leasehold estates for residential properties is an accepted practice, the mortgage, deed of trust or other instrument securing the Mortgage Note may secure and create a lien upon a leasehold estate of the Mortgagor.

<u>Mortgage File</u>:  The mortgage documents pertaining to a particular Mortgage Loan which are in Seller's possession and control.

<u>Mortgage Interest Rate</u>:  The annual rate at which interest accrues on each Mortgage Loan, as set forth in and adjusted from time to time in accordance with the terms of the related Mortgage Note.

Mortgage Loan:  An individual Mortgage Loan assigned and transferred pursuant to this Agreement and identified on the Mortgage Loan Schedule.

Mortgage Loan Schedule:  A schedule of Mortgage Loans attached as Exhibit B, such schedule setting forth the information with respect to each Mortgage Loan as set forth in Exhibit E hereto.

Mortgage Note:  The note or other evidence of the indebtedness of a Mortgagor secured by a Mortgage.

Mortgaged Property:  The real property or leasehold estate.

Mortgagor:  The obligor on a Mortgage Note.

Person:  Any individual, corporation, limited liability company, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or government or any agency or political subdivision thereof.

PMI Policy:  A policy of Private Mortgage Insurance issued by a generally accepted insurer with respect to certain Mortgage Loans.

Principal Prepayment:  Any full or partial payment or other recovery of principal on a Mortgage Loan which is received in advance of its scheduled Due Date, excluding any prepayment penalty or premium thereon and which is not accompanied by an amount of interest representing scheduled interest due on any date or dates in any month or months subsequent to the month of prepayment.

Private Mortgage Insurance:  Insurance obtained from a primary mortgage insurer which insures the holder of a Mortgage Note against loss in the event the related Mortgagor defaults under such Mortgage Note or the related Mortgage, including all riders and endorsements thereto.

Purchase Price:  As defined in Section 2.02.

Purchase Price Percentage:  As to each Mortgage Loan, the amount set forth on the Mortgage Loan Schedule.

Purchaser:  LSF7 Mortgage Acquisitions II, LLC, its successors in interest and assigns.

Refinanced Mortgage Loan:  A Mortgage Loan which was made to a Mortgagor who owned the Mortgaged Property prior to the origination of such Mortgage Loan and the proceeds of which were used in whole or part to satisfy an existing mortgage.

Remittance: As defined in Section 2.03.

REO File:  With respect to each REO Property, the documents and items pertaining to such REO Property delivered by the Seller to the Purchaser and identified in

Exhibit H hereto, together with all other documents executed or provided to the Seller or in the possession of the Seller in connection with the acquisition, management or maintenance of the REO Property.

REO Property: Any Mortgaged Property, which as of the Closing Date, has been acquired by the Seller through foreclosure, deed-in-lieu of foreclosure, abandonment or reclamation from bankruptcy in connection with a defaulted Mortgage Loan.

Repurchase Price: With respect to any Mortgage Loan or REO Property, as applicable, an amount equal to (A) the related Purchase Price Percentage times the outstanding principal balance as of the date of repurchase plus (B) the amount equal to any Servicing Advances reimbursed by the Purchaser to Interim Servicer hereunder less any amounts recovered or collected by the Purchaser with respect to such Servicing Advances plus (C) the amount equal to any reasonable and documented Servicing Advances paid by Purchaser and/or its servicer from and after the Servicing Transfer Date less any amounts recovered or collected by the Purchaser with respect to such Servicing Advances.

RESPA: Real Estate Settlement Procedures Act, as amended.

Seller: Flagstar Bank, FSB, its successors in interest and assigns.

Servicing Advances: With respect to the Mortgage Loans, all customary, reasonable and necessary "out of pocket" costs and expenses (including reasonable attorneys' fees and disbursements) incurred in the performance by the then-existing servicer of its servicing obligations associated with (a) any and all funds advanced by the such servicer for the payment of taxes, assessments, hazard insurance premiums and comparable items, (b) the inspection, preservation and protection of the Mortgaged Property, and (c) any enforcement or judicial proceedings, including foreclosures and bankruptcy proceedings.

Servicing File: With respect to each Mortgage Loan, the file retained by the Interim Servicer to service such Mortgage Loan.

Servicing Rights: With respect to each Mortgage Loan, any and all of the following: (a) any and all rights to service the Mortgage Loans; (b) any payments to or monies received for servicing the Mortgage Loans; (c) any late fees, penalties or similar payments with respect to the Mortgage Loans; (d) all agreements or documents creating, defining or evidencing any such servicing rights to the extent they relate to such servicing rights and all rights of the Seller thereunder; (e) Escrow Payments or other similar payments with respect to the Mortgage Loans and any amounts actually collected by the Seller with respect thereto; (f) all accounts and other rights to payment related to any of the property described in this paragraph; and (g) any and all documents, files, records, servicing files, servicing documents, servicing records, data tapes, computer records, or other information pertaining to the Mortgage Loans or pertaining to the past, present or prospective servicing of the Mortgage Loans.

Servicing Transfer Date: A mutually agreed upon date occurring not less than 17 days after the Closing Date but not later than January 1, 2011.

Stated Principal Balance:  As to each Mortgage Loan as of any date of determination, the principal balance of such Mortgage Loan at the Cut-off Date after giving effect to payments of principal received on or before such date.

## ARTICLE II

### INTERIM SERVICING OF MORTGAGE LOANS; RECORD TITLE AND POSSESSION OF MORTGAGE FILES; BOOKS AND RECORDS; DELIVERY OF MORTGAGE LOAN DOCUMENTS

Section 2.01   Agreement to Purchase.

On the Closing Date, the Seller agrees to sell and the Purchaser agrees to purchase the Mortgage Loans having a Stated Principal Balance on the Cut-off Date in the amount set forth in the Mortgage Loan Schedule.  All Mortgage Loans sold hereunder include the related Servicing Rights thereon. The Seller shall deliver the Mortgage Loan Schedule to the Purchaser at least two (2) Business Days prior to the Closing Date.  The Seller, simultaneously with the delivery of such Mortgage Loan Schedule, shall execute and deliver an Assignment and Conveyance with respect to the Mortgage Loans in the form attached hereto as Exhibit C.

Section 2.02   Purchase Price.

The Purchase Price for each Mortgage Loan shall be the related Purchase Price Percentage multiplied by the Stated Principal Balance of such Mortgage Loan as of the Cut-off Date.

The Purchaser shall pay to the Seller the Purchase Price on the Closing Date by wire transfer of immediately available funds in accordance with each Seller's written instructions.

The Purchaser shall be entitled to (1) all principal payments received after the Cut-off Date, (2) all other recoveries of principal collected on or after the Cut-off Date, and (3) all payments of interest on the Mortgage Loans received after the Cut-off Date.

If any amount paid pursuant to this Agreement is found to have been calculated or paid in error or is otherwise erroneous, the party discovering such error(s) shall promptly give notice to the other party and the parties shall cooperate in good faith to reconcile such error(s). Upon the reconciliation of any such error(s) by the parties, the party benefiting from the error shall promptly pay to the other party an amount sufficient to correct the error together with interest thereon at an agreed upon market rate.

Section 2.03   Interim Servicing of Mortgage Loans.

The Mortgage Loans and the Servicing Rights associated therewith shall be sold by the Seller to the Purchaser on the Closing Date.  During the Interim Servicing Period, the Interim Servicer shall service or cause to be serviced the Mortgage Loans for the benefit of the Purchaser and shall provide all appropriate cooperation in connection with the transfer of

servicing in accordance with an Interim Servicing Agreement in a form substantially similar to the form attached hereto as Exhibit F. The Interim Servicer shall deliver to Purchaser or its designee all customary documentation or invoices to adequately substantiate and itemize each outstanding and unreimbursed Servicing Advance made prior to the Servicing Transfer Date with respect to the Mortgage Loans.

Section 2.04    Record Title and Possession of Mortgage Files.

As of the Closing Date, the Seller hereby sells, transfers, assigns, sets over and conveys to the Purchaser, without recourse (except as otherwise expressly provided herein), and the Seller hereby acknowledges that the Purchaser has, subject to the terms of this Agreement, all the right, title and interest of the Seller in and to the Mortgage Loans.

With respect to each REO Property, if applicable:

Within five (5) days of the Closing Date, the Seller shall deliver to the Purchaser all documents contained in the REO File. If the Mortgage Loan becomes REO Property prior to the Closing Date, the Seller will provide (upon having the legal authority to do so, e.g., after the expiration of any statutory redemption period) the Purchaser, on the Closing Date, a special warranty deed executed by Seller to the Purchaser or Purchaser's designee in a form recordable in the jurisdiction in which the REO Property is located. For any Mortgage Loan that becomes a REO Property after the Closing Date, the Seller shall be responsible for the preparation and execution of any necessary special warranty deed, which shall be promptly provided to Purchaser.

Section 2.05    Books and Records.

On the Closing Date, the sale of each Mortgage Loan shall be reflected on the Seller's balance sheets and other financial statements as a sale of assets by the Seller. The Seller shall be responsible for maintaining a complete set of books and records for the Mortgage Loans which shall be appropriately identified in the Seller's computer systems to clearly reflect the ownership of each Mortgage Loan by the Purchaser.

Section 2.06    Delivery of Documents.

The Seller shall deliver, or cause to be delivered, and release, or cause to be released, to the Purchaser or its designee with respect to each Mortgage Loan before the Closing Date as mutually agreed by the parties, any mortgage loan documents in Seller's' possession and control, which shall include the following:

(a) The original Mortgage Note bearing all intervening endorsements, endorsed "Pay to the order of _____ without recourse" and signed in the name of the last endorsee (the "Last Endorsee") by an authorized Person (in the event that the Mortgage Loan was acquired by the Last Endorsee in a merger, the signature must be in the following form: "[Last Endorsee], successor by merger to [name of predecessor]"; in the event that the Mortgage Loan was acquired or originated by the Last Endorsee while doing business under another name, the signature must be in the following form: "[Last Endorsee], formerly known as [previous name]"). In the event that the original Mortgage Note has been lost a Lost Note Affidavit,

-6-

Case 3:12-cv-01602-D   Document 1-4   Filed 05/22/12   Page 25 of 90   PageID 33

providing indemnification to the holder thereof for any losses incurred due to the fact that the original Mortgage Note is missing, and in a form as set forth in Exhibit D hereto, may be in place of the Mortgage Note. In all instances a copy of the original Mortgage Note must accompany the Lost Note Affidavit.

(b) The original of the guarantee executed in connection with the Mortgage Note (if any).

(c) The original Mortgage with evidence of recording thereon, or an imaged copy thereof.

(d) The originals of all assumption, modification, consolidation or extension agreements with evidence of recording thereon, or copies thereof certified by the Seller or its agent, escrow agent, recording office or closing attorney to be true and correct copies of the originals submitted for recordation in the appropriate governmental recording office of the jurisdiction where the Mortgaged Property is located.

(e) Except for each Mortgage Loan registered in the MERS System, the original Assignment of Mortgage in blank for each Mortgage Loan, in form and substance acceptable for recording and signed in the name of the Last Endorsee (in the event that the Mortgage Loan was acquired by the Last Endorsee in a merger, the signature must be in the following form: "[Last Endorsee], successor by merger to [name of predecessor]"; in the event that the Mortgage Loan was acquired or originated while doing business under another name, the signature must be in the following form: "[Last Endorsee], formerly known as [previous name]").

(f) The originals of all intervening assignments of mortgage with evidence of recording thereon, showing an unbroken chain of title from the originator thereof to the Last Endorsee or copies thereof certified by the Seller or its agent, escrow agent, recording office or closing attorney to be true and correct copies of the originals submitted for recordation in the appropriate governmental recording office of the jurisdiction where the Mortgaged Property is located.

(g) The original or an imaged copy of the original mortgagee title insurance policy. The original of any security agreement, chattel mortgage or equivalent document executed in connection with the Mortgage Loan.

(h) With respect to a Mortgage Loan that is covered by a Primary Insurance Policy, an imaged copy of such Primary Mortgage Insurance Policy.

(i) In the event that a Mortgage File has been released to either the servicer or a third party for purposes of foreclosure, bankruptcy or legal defense, the Custodian shall have received a release form documenting the date the file was released, the party to where the file was released, the documents that were released, and the purpose of the release of documents. Furthermore, in an instance where the file is released outside the control of the servicer, a bailee letter should be provided listing the documents that the outside party holds on behalf of the Owner.

-7-

From time to time, the Sellers shall forward to the Custodian additional original documents or additional documents evidencing an assumption, modification, consolidation or extension of a Mortgage Loan. The Purchaser or its designee shall record Assignments of Mortgage and Purchaser shall be responsible for all recording fees associated therewith.

For a period of six (6) months following the Closing Date, the Seller agrees to repurchase any Mortgage Loan at the Repurchase Price for which (i) the Purchaser has identified to the Seller that such Mortgage Loan is missing a mortgage loan document identified above and the Seller was unable to provide such missing mortgage loan document to the Purchaser within sixty (60) days after receipt of Purchaser's notice and (ii) the Purchaser has notified Seller in writing with a detailed explanation as to how such missing mortgage loan document may cause the Purchaser to be unable to foreclose on such Mortgage Loan.

Section 2.07    Servicing of Mortgage Loans after Servicing Transfer Date.

The Purchaser agrees that with respect to any Mortgage Loan for which Seller or Interim Servicer placed the Mortgagor on any type of payment plan, including, but not limited to, a modification (trial or final), forbearance agreement, the Purchaser shall, and shall cause its servicer to, comply with and abide by the terms of such payment plan.

With respect to any Mortgage Loan which is, as of the Servicing Transfer Date, the subject of litigation, bankruptcy or foreclosure, the Purchaser and the Seller and the Interim Servicer agree to cooperate and use their commercially reasonable best efforts, within sixty (60) days after the Servicing Transfer Date and at the Purchasers' expense, to (i) notify the clerk of the court, any foreclosure or bankruptcy trustee and all counsel of record in each such proceeding of the transfer of the Mortgage Loan from the Seller to the Purchaser, (ii) file pleadings to relieve each Seller's counsel of record from further responsibility in such litigation, unless said counsel has agreed, to represent the Purchaser in said proceedings at the Purchaser's expense, and (iii) make application to the court to remove any Seller as a party in such action and substitute the Purchaser, or its designee, as the real party-in-interest, and change the caption thereof accordingly. In connection therewith, after the Servicing Transfer Date if items (i), (ii) and (iii) have been satisfied and the applicable Seller is no longer a party to the action, the Purchaser shall have the sole responsibility to determine the appropriate direction and strategy for such litigation or proceeding. If the Purchaser fails to use commercially reasonable efforts to comply with the above requirements, any Seller, upon fifteen (15) Business Days prior written notice to the Purchaser, may on the Purchaser's behalf and at the Purchaser's expense complete any of the actions specified in clauses (i), (ii) and (iii) above. The Purchaser acknowledges that its failure to comply with the provisions of this paragraph may affect the Purchaser's rights in any such litigation or proceeding (including, without limitation, any dismissal with prejudice or the running of any statute of limitations), if any such action or proceeding is dismissed.

Section 2.08   Power of Attorney.

Seller hereby irrevocably constitutes and appoints Purchaser and any officer or agent thereof, with full power of substitution, as its true and lawful attorney-in-fact with full power and authority in the place and stead of Seller, and in the name of the Seller or in its own name, from time to time, for the purpose of carrying out the terms of this Agreement (including the transfer and sale of the Mortgage Loans hereunder) and complying with the terms of the related Mortgage Loan documents, and to take any and all appropriate action and execute any and all documents and instruments which may be necessary or appropriate to accomplish the purpose of this Agreement (including without limitation the sale, transfer, conveyance, grant, assignment and delivery of the Mortgage Loans to the Purchaser hereunder) and comply with the terms of the related Mortgage Loan documents.  Upon the request from time to time of Purchaser or its successor servicer, Seller shall execute and deliver originals of the form of power of attorney attached hereto as Exhibit F for the purpose of facilitating the foregoing power of attorney appointment and grant in this Section.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES OF EACH SELLER; REPURCHASE; REVIEW·OF MORTGAGE LOANS

Section 3.01   Representations and Warranties of each Seller.

Seller represents, warrants and covenants to the Purchaser that as of the Closing Date or as of such date specifically provided herein:

(a)   Organization and Standing. Seller is a federally chartered savings bank duly organized and existing under the laws of the United States of America and is qualified and/or licensed to transact business in each jurisdiction where such qualification and/or licensing is necessary;

(b)   Due Authority: Seller has the full power and authority and legal right to hold, sell, transfer and convey each Mortgage Loan and to execute, deliver and perform, and to enter into and consummate all transactions contemplated by this Agreement, has duly authorized the execution, delivery and performance of this Agreement, and this Agreement constitutes a legal, valid and binding obligation of Seller, enforceable against it in accordance with its terms, subject to bankruptcy, insolvency and other laws of general application affecting the rights of creditors;

(c)   No Conflicts: None of the execution and delivery of this Agreement, the sale of the Mortgage Loans to the Purchaser, the consummation of the transactions contemplated hereby, or the fulfillment of or compliance with the terms and conditions of this Agreement will conflict with any of the terms, conditions or provisions of the Seller's organizational documents, materially conflict with or result in a material breach of any of the terms, conditions or provisions of any legal restriction or any material agreement or material instrument to which Seller is now a party or by which it is bound, or constitute a material default or result in an acceleration under any of the foregoing, or result in the material violation of any law, rule,

regulation, order, judgment or decree to which Seller or its property is subject or impair the ability of the Purchaser to realize on the Mortgage Loans;

      (d)   <u>No Litigation</u>: There is no litigation, suit, proceeding or investigation pending or to the actual knowledge of the Seller, threatened, or any order or decree outstanding, with respect to Seller which, either in one instance or in the aggregate, is reasonably likely to have a material adverse effect on the sale of the Mortgage Loans, the execution, delivery, performance or enforceability of this Agreement, or which is reasonably likely to have a material adverse effect on the financial condition of Seller;

      (e)   <u>No Consent</u>: To the best of Seller's knowledge, no consent, approval, authorization or order of any court or governmental agency or body is required for the execution, delivery and performance by Seller of or compliance by Seller with this Agreement, or the sale of the Mortgage Loans and delivery of the Mortgage Files to the Purchaser or the consummation of the transactions contemplated by this Agreement, except for consents, approvals, authorizations and orders which have been obtained;

      (f)   <u>Ordinary Course</u>: The consummation of the transactions contemplated by this Agreement is in the ordinary course of business of the Seller, and the transfer, assignment and conveyance of the Mortgage Notes and the Mortgages by the Seller pursuant to this Agreement are not subject to bulk transfer or any similar statutory provisions in effect in any applicable jurisdiction;

      (g)   <u>Sale Treatment</u>: Seller will treat the sale of the Mortgage Loans to the Purchaser as a sale for reporting and accounting purposes and, to the extent appropriate, for federal income tax purposes; and

      (h)   <u>Performance</u>: Seller does not believe, nor does it have any cause or reason to believe, that it cannot perform each and every covenant contained in this Agreement. Seller is solvent and the sale of the Mortgage Loans will not cause Seller to become insolvent. The sale of the Mortgage Loans is not undertaken with the intent to hinder, delay or defraud any of the Seller's creditors.

      The Seller hereby additionally represents and warrants to the Purchaser that, with respect each REO Property, as of the Closing Date:

      (a)   <u>Ownership</u>: The REO Property is not assigned or pledged, and the Seller has authority to transfer and sell the REO Property to the Purchaser.  Notwithstanding the foregoing, Seller makes no representation or warranty as to the extent or absence of homeowners' association fees or similar charges that may encumber, in a junior lien position, any mortgaged property or REO property;

      (b)   <u>Location and Type of REO Property</u>: To Seller's actual knowledge, the REO Property is located in the state identified in the Mortgage Loan Schedule and consists of a contiguous parcel of real property with a detached single family residence erected thereon, or a two- to four-family dwelling, or a manufactured home, or a modular home, or a condotel, or a

lot, or land, or an individual condominium unit in a condominium project, or an individual unit in a planned unit development or a townhouse, and no residence or dwelling is a mobile home;

(c)     REO Property Undamaged:   To Seller's actual knowledge, the REO Property is undamaged by water, fire, earthquake or earth movement, windstorm, flood, tornado or other casualty so as to affect adversely the value of the REO Property as security for the Mortgage Loan or the use for which the premises was intended;

(d)     No Violation of Environmental Laws:   To Seller's actual knowledge, there is no pending action or proceeding directly involving any REO Property of which the Seller is aware in which compliance with any environmental law, rule or regulation is an issue; and to the Seller's actual knowledge, nothing further remains to be done to satisfy in full all requirements of each such law, rule or regulation constituting a prerequisite to use and enjoyment of said property; and

(e)     No Condemnation:   To Seller's actual knowledge, there is no proceeding pending or threatened for the total or partial condemnation of the related REO Property.

Section 3.02    Representations and Warranties as to Individual Mortgage Loans.

Seller represents and warrants for each Mortgage Loan that as of the Closing Date, or such other date as set forth herein:

(a)     Mortgage Loan Schedule:   The information set forth in the Mortgage Loan Schedule is true and correct in all material respects as of the Cut-off Date;

(b)     Valid Mortgage:    The Mortgage creates a valid, subsisting and enforceable first lien or a first priority ownership interest in the Mortgaged Property, including all improvements on the Mortgaged Property, free and clear of all adverse claims, liens and encumbrances having priority over the first lien of the Mortgage, subject only to (1) the lien of current real property taxes and assessments not yet due and payable, (2) covenants, conditions and restrictions, rights of way, easements and other matters of the public record as of the date of recording which are acceptable to mortgage lending institutions generally and either (A) which are referred to in the title insurance policy, or (B) which do not adversely affect the value of the Mortgaged Property, and (3) other matters to which like properties are commonly subject which do not individually or in the aggregate materially interfere with the benefits of the security intended to be provided by the Mortgage or the use, enjoyment, value or marketability of the related Mortgaged Property;

(c)     No Advances: The Seller has not advanced funds, or induced, solicited or knowingly received any advance of funds from a party other than the Mortgagor, directly or indirectly, for the payment of any amount required by the Mortgage Loan;

(d)     Taxes, HOA Fees, and Assessments: As of the Closing Date, all taxes and any home owners association fees ("HOA Fees") which previously became due and owing have been paid, or escrow funds have been established in an amount sufficient to pay for any such

taxes or HOA Fees which remain unpaid and which have been assessed but not yet due and payable;

      (e)   <u>No Defenses</u>: The Mortgage Note and the Mortgage are not subject to any right of rescission, set-off, counterclaim or defense, including, without limitation, the defense of usury, nor will the operation of any of the terms of the Mortgage Note or the Mortgage, or the exercise of any right thereunder, render the Mortgage Note or Mortgage unenforceable, in whole or in part, or subject to any right of rescission, set-off, counterclaim or defense, including the defense of usury;

      (f)   <u>No Release of Mortgage</u>:  The Mortgage has not been satisfied, canceled or subordinated, in whole or in part, or rescinded, and the Mortgaged Property has not been released from the lien of the Mortgage, in whole or in part, nor has any instrument been executed that would effect any such release, cancellation, subordination or rescission;

      (g)   <u>Sole Owner</u>:  The Seller is the sole owner and holder of the Mortgage Loan and the indebtedness evidenced by each Mortgage Note.  The Mortgage Loan, including the Mortgage Note and the Mortgage, are not assigned or pledged, other than to MERS as designee of Seller, and the Seller has good and marketable title thereto and has full right to transfer and sell the Mortgage Loan to the Purchaser free and clear of any encumbrance, equity, lien, pledge, charge, claim or security interest;

      (h)   <u>Servicing</u>: For the time period the Seller owned such Mortgage Loan, the servicing and collection practices with respect to each Mortgage Note and Mortgage have been in all respects legal and proper and in accordance with the terms of the Mortgage Note or Mortgage;

      (i)   <u>Private Mortgage Insurance</u>: With respect to any Mortgage Loan subject to a PMI Policy as indicated on the Mortgage Loan Schedule, all provisions of such PMI Policy have been and are being complied with, such policy is in full force and effect, and all premiums due thereunder have been paid. Any Mortgage Loan subject to a PMI Policy obligates the Mortgagor thereunder to maintain the PMI Policy and to pay all premiums and charges in connection therewith. The Mortgage Interest Rate for any such Mortgage Loan as set forth on the Mortgage Loan Schedule is net of any such insurance premium;

      (j)   <u>Original Terms Unmodified</u>:  The terms of the related Mortgage Note and related Mortgage have not been impaired, waived, altered or modified in any respect, from the date of origination, except by written instruments which (a) have been recorded in the applicable public recording office, if required by law or otherwise in accordance with the Seller's loan modification guidelines, and (b) which have been delivered to the Purchaser; and

      (k)   <u>Litigation</u>: Other than with respect to any foreclosure, bankruptcy, eviction or similar proceeding, or as otherwise disclosed in the Mortgage Loan Schedule, as of the Cut-Off Date, Seller has not received notice of any  material litigation with respect to the Mortgage Loans.

Section 3.03    Repurchase.

It is understood and agreed that the representations and warranties set forth in Sections 3.01 and 3.02 shall survive the sale of the Mortgage Loans and shall inure to the benefit of the Purchaser, notwithstanding any restrictive or qualified endorsement on any Mortgage Note or Assignment of Mortgage (except with respect to each MERS Designated Mortgage Loan) or the examination, or lack of examination, of any Mortgage File for a period of six (6) months after the Closing Date; provided, however, that the representations and warranties set forth in Section 3.02(i) shall survive for a period of two (2) years after the Closing Date.  Upon discovery of a breach of any of the foregoing representations and warranties which materially and adversely affects the value of a Mortgage Loan or the Mortgage Loans (or REO Property, as applicable) or the interest of the Purchaser in any Mortgage Loan or all of the Mortgage Loans (or REO Property, as applicable), the party discovering such breach shall give prompt written notice to the other.  Seller shall have a period of sixty (60) days from the earlier of its discovery or its receipt of notice of any such breach within which to correct or cure such breach.  Seller hereby covenants and agrees that if any such breach is not corrected or cured within such sixty (60) day period, the Seller shall, not later than sixty (60) days following the end of the sixty (60) day cure period, repurchase such Mortgage Loan (or REO Property, as applicable) at the Repurchase Price.

In connection with any repurchase of a Mortgage Loan hereunder by the Seller and upon receipt of the Repurchase Price, the Purchaser shall, subject to any requirements under RESPA, immediately transfer the servicing of such Mortgage Loan to Seller or its designee, which transfer shall include transfer of the Servicing File and Mortgage File and any other servicing records in Purchaser's possession and control and transfer of any positive escrow account.  Further, the Purchaser agrees to execute any documents as reasonably required by the Seller to convey proper title of the Mortgage Loan, including, but not limited to, an assignment of mortgage.  Seller shall pay all reasonable documented out-of-pocket costs and expenses in connection with any such repurchase of a Mortgage Loan, including, without limitation, the costs and expenses to prepare any conveyance documents and the costs of recording the same.

It is understood and agreed that the obligations of the Seller set forth in this Section 3.03 to cure or repurchase for a defective Mortgage Loan constitute the sole remedies of the Purchaser respecting a breach of the foregoing representations and warranties.

Section 3.04    Representations and Warranties of Purchaser

The Purchaser represents, warrants and covenants to the Seller that as of the Closing Date or as of such date specifically provided herein:

(a)    Organization and Standing: Purchaser is a limited liability company duly organized and existing under the laws of the State of Delaware and is qualified and/or licensed to transact business in each jurisdiction where such qualification and/or licensing is necessary;

(b)    Due Authority: Purchaser has the full power and authority and legal right to hold and acquire each Mortgage Loan, to purchase each Mortgage Loan and to execute, deliver and perform, and to enter into and consummate all transactions contemplated by this

-13-

Agreement and to conduct its business as presently conducted, has duly authorized the execution, delivery and performance of this Agreement and any agreements contemplated hereby, has duly executed and delivered this Agreement, and any agreements contemplated hereby, and this Agreement, constitute a legal, valid and binding obligation of Purchaser, enforceable against it in accordance with its terms, and all requisite corporate action has been taken by Purchaser to make this Agreement and all agreements contemplated hereby valid and binding upon Purchaser in accordance with their terms, subject to bankruptcy, insolvency and other laws of general application affecting the rights of creditors;

(c)  No Conflicts:  None of the execution and delivery of this Agreement, the purchase of the Mortgage Loans by the Purchaser, the consummation of the transactions contemplated hereby, or the fulfillment of or compliance with the terms and conditions of this Agreement will conflict with any of the terms, conditions or provisions of the Purchaser's organizational documents materially conflict with or result in a material breach of any of the terms, conditions or provisions of any legal restriction or any material agreement or material instrument to which Purchaser is now a party or by which it is bound, or constitute a material default or result in an acceleration under any of the foregoing, or result in the material violation of any law, rule, regulation, order, judgment or decree to which Seller or its property is subject or impair the ability of the Purchaser to realize on the Mortgage Loans;

(d)  No Litigation:  There is no litigation, suit, proceeding or investigation pending or to the actual knowledge of the Purchaser, threatened, or any order or decree outstanding, with respect to Purchaser which, either in one instance or in the aggregate, is reasonably likely to have a material adverse effect on the purchase of the Mortgage Loans, the execution, delivery, performance or enforceability of this Agreement, or which is reasonably likely to have a material adverse effect on the financial condition of Purchaser;

(e)  No Consents:  No consent, approval, authorization or order of any court or governmental agency or body is required for the execution, delivery and performance by Purchaser of or compliance by Purchaser with this Agreement, or the purchase of the Mortgage Loans by the Purchaser or the consummation of the transactions contemplated by this Agreement, except for consents, approvals, authorizations and orders which have been obtained;

(f)  Ordinary Course:  The consummation of the transactions contemplated by this Agreement is in the ordinary course of business of the Purchaser, and the transfer, assignment and acceptance of the Mortgage Notes and the Mortgages to the Purchaser pursuant to this Agreement are not subject to bulk transfer or any similar statutory provisions in effect in any applicable jurisdiction; and

## ARTICLE IV

## MISCELLANEOUS PROVISIONS

Section 4.01   Amendment.

This Agreement may be amended from time to time by the Seller and the Purchaser by written agreement signed by the Seller and the Purchaser.

Section 4.02   Governing Law.

This Agreement and any claim, controversy or dispute arising under or related to this Agreement shall be governed by and construed in accordance with the laws of the State of New York except to the extent preempted by federal law, without giving effect to choice of law principles. The obligations, rights and remedies of the parties hereunder shall be determined in accordance with such laws.

Section 4.03   Notices.

Any demands, notices or other communications permitted or required hereunder shall be in writing and shall be deemed conclusively to have been given if personally delivered at or mailed by overnight mail, registered mail, postage prepaid, and return receipt requested or certified mail, return receipt requested, or transmitted by telex, telegraph or telecopier and confirmed by a similar mailed writing, as follows:

    (i)    if to Seller:

> Flagstar Bank, FSB
> 5151 Corporate Drive
> Troy, Michigan 48098
> Attention: Mortgage Banking and Warehouse

with a copy to:

> Flagstar Bank, FSB, Legal Department at the same address above

    (ii)    if to the Purchaser:

> LSF7 Mortgage Acquisitions II, LLC
> 2711 North Haskell Avenue, Suite 1700
> Dallas, Texas 75204
> Attention: Jason Biegel

with a copy to:

> LSF7 Mortgage Acquisitions II, LLC, Legal Department at the same address above

or such other address as may hereafter be furnished to the other party by like notice. Any such demand, notice or communication hereunder shall be deemed to have been received on the date delivered to or received at the premises of the addressee (as evidenced, in the case of registered or certified mail, by the date noted on the return receipt)

Section 4.04    Severability of Provisions.

Any part, provision, representation or warranty of this Agreement which is prohibited or which is held to be void or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof. Any part, provision, representation or warranty of this Agreement which is prohibited or unenforceable or is held to be void or unenforceable in any jurisdiction shall be ineffective, as to such jurisdiction, to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction as to any Mortgage Loan shall not invalidate or render unenforceable such provision in any other jurisdiction. To the extent permitted by applicable law, the parties hereto waive any provision of law which prohibits or renders void or unenforceable any provision hereof. If the invalidity of any part, provision, representation or warranty of this Agreement shall deprive any party of the economic benefit intended to be conferred by this Agreement, the parties shall negotiate, in good faith, to develop a structure the economic effect of which is nearly as possible the same as the economic effect of this Agreement without regard to such invalidity.

Section 4.05    Exhibits.

The exhibits to this Agreement are hereby incorporated and made a part hereof and are an integral part of this Agreement.

Section 4.06    General Interpretive Principles.

For purposes of this Agreement, except as otherwise expressly provided or unless the context otherwise requires:

(i)    the terms defined in this Agreement have the meanings assigned to them in this Agreement and include the plural as well as the singular, and the use of any gender herein shall be deemed to include the other gender;

(ii)    accounting terms not otherwise defined herein have the meanings assigned to them in accordance with generally accepted accounting principles;

(iii)    references herein to "Articles", "Sections", Subsections", "Paragraphs", and other subdivisions without reference to a document are to designated Articles, Sections, Subsections, Paragraphs and other subdivisions of this Agreement;

(iv)    a reference to a Subsection without further reference to a Section is a reference to such Subsection as contained in the same Section in which the reference appears, and this rule shall also apply to Paragraphs and other subdivisions;

-16-

(v)    the words "herein", "hereof ", "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular provision, unless otherwise specifically indicated;

(vi)    the term "include" or "including" shall mean without limitation by reason of enumeration; and

(vii)    headings of the Articles and Sections in this Agreement are for reference purposes only and shall not be deemed to have any substantive effect.

Section 4.07    Reproduction of Documents.

This Agreement and all documents relating thereto, including, without limitation, (i) consents, waivers and modifications which may hereafter be executed, (ii) documents received by any party at the closing, and (iii) financial statements, certificates and other information previously or hereafter furnished, may be reproduced by any photographic, photostatic, microfilm, micro-card, miniature photographic or other similar process. The parties agree that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding, whether or not the original is in existence and whether or not such reproduction was made by a party in the regular course of business, and that any enlargement, facsimile or further reproduction of such reproduction shall likewise be admissible in evidence.

Section 4.08    Confidentiality of Information.

Each party recognizes that, in connection with this Agreement, it may become privy to non-public information regarding the financial condition, operations and prospects of the other party. Each party agrees to keep all non-public information regarding the other party strictly confidential, and to use all such information solely in order to effectuate the purpose of the Agreement, provided that each party may provide confidential information to its employees, agents and affiliates who have a need to know such information in order to effectuate the transaction, provided further that such information is identified as confidential non-public information. In addition, confidential information may be provided to a regulatory authority with supervisory power over Purchaser or Seller, provided such information is identified as confidential non-public information.

Until the date that the Purchaser is the owner of the Mortgage Loans, the Purchaser agrees that it will keep confidential any nonpublic personal information which it receives from Seller in connection with its due diligence of the Mortgage Loans, except as required to perform its obligations in accordance with this Agreement. For purposes of this provision, the term "nonpublic personal information" shall have the meanings set forth in § 509 of the Gramm-Leach-Bliley Act (P.L. 106-102) (15 U.S.C. § 6809) and implementing regulations thereof.

Section 4.09    No Assignment by Purchaser.

The Purchaser may from time to time, sell and transfer one or more of the Mortgage Loans, provided however, that the Purchaser shall not assign, in whole or in part, its

-17-

interest under this Agreement with respect to some or all of the Mortgage Loans without the prior written consent of the Seller; provided, however, upon written notice to Seller, Purchaser may assign this Agreement, in whole or in part, to one or more affiliates of Purchaser without Seller's prior written consent.

Section 4.10   Execution: Successors and Assigns.

This Agreement may be executed in one or more counterparts and by the different parties hereto on separate counterparts, each of which, when so executed, shall be deemed to be an original; such counterparts, together, shall constitute one and the same agreement. Subject to Section 4.09, this Agreement shall inure to the benefit of and be binding upon the Seller and the Purchaser and their respective successors and assigns.

Section 4.11   Entire Agreement.

Purchaser acknowledges that no representations, agreements or promises were made to Purchaser by Seller or any of its employees other than those representations, agreements or promises specifically contained herein. This Agreement sets forth the entire understanding between the parties hereto and shall be binding upon all successors of both parties.

Section 4.12   Documents Mutually Drafted

The Seller and the Purchaser agree that this Agreement and each other agreement prepared in connection with the transactions set forth herein have been mutually drafted and negotiated by each party, and consequently such documents shall not be construed against either party as the drafter thereof.

Section 4.13   Closing.

The closing for the purchase and sale of the Mortgage Loans shall take place on the Closing Date. The closing shall be either: by telephone, confirmed by letter or wire as the parties shall agree, or conducted in person, at such place as the parties shall agree.

The closing for the Mortgage Loans to be purchased on the Closing Date shall be subject to each of the following conditions:

(a)     the Seller shall deliver to the Purchaser a listing on a loan-level basis of the information contained in the Mortgage Loan Schedule;

(b)     the Seller shall deliver to the Purchaser an executed Assignment and Conveyance substantially in the form of Exhibit C hereto, including as an exhibit thereto a funding schedule detailing the Purchase Price with respect to each Mortgage Loan;

(c)     all of the representations and warranties of Seller under this Agreement shall be materially true and correct as of the Closing Date and no event shall have occurred which, with notice or the passage of time, would constitute a material default under this Agreement;

-18-

(d)      the Seller shall have delivered and released to the Purchaser (or its designee) on or prior to the Closing Date all documents required pursuant to the terms of this Agreement;

(e)      all other terms and conditions of this Agreement shall have been materially complied with; and

(f)      the Purchaser shall pay to the Seller on the Closing Date the Purchase Price by wire transfer of immediately available funds to the account designated by the Seller.

Section 4.14    Costs.  The Seller shall pay any commissions due its salesmen and the legal fees and expenses of its attorneys.  The Purchaser shall pay any commissions due its salesmen and the legal fees and expenses of its attorneys or any fees due their broker.  All other costs and expenses incurred in connection with the transfer and delivery of the Mortgage Loans, including assignment recordation fees and expenses, fees for title policy endorsements and continuations and the Purchaser's attorney's fees, shall be paid by the Purchaser.

[Signature Page Follows]

IN WITNESS WHEREOF, the Seller and the Purchaser have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the day and year first above written.

FLAGSTAR BANK, FSB, Seller

By: _____
    Name:  Matthew Kool.
    Title:  EVP


LSF7 MORTGAGE ACQUISTIONS II, LLC,
Purchaser


By: _____
    Name:  Marc L. Lipshy
    Title:  Vice President

**EXHIBIT A**

RESERVED

**EXHIBIT B**

MORTGAGE LOAN SCHEDULE

B-1

| ID | CURRENT BALANCE |
|---|---|
| 500152919 | 93780.48 |
| 501560633 | 250664.67 |
| 500644895 | 449999.97 |
| 501352314 | 572987.13 |
| 501262288 | 599978.16 |
| 501461011 | 229459.79 |
| 999898437 | 246406.59 |
| 500367417 | 353500 |
| 998014797 | 45210.79 |
| 8642102 | 50012.74 |
| 4201532 | 50278.46 |
| 998185093 | 65605.55 |
| 121911 | 67345.93 |
| 122781 | 84493.06 |
| 501165962 | 85225.62 |
| 998023653 | 87085.39 |
| 998663378 | 93465.85 |
| 999079096 | 94409.32 |
| 980145232 | 101531.56 |
| 501307040 | 107674.74 |
| 500220139 | 112555.8 |
| 500332056 | 141502.77 |
| 999632865 | 145160.68 |
| 121507 | 146005.61 |
| 500817304 | 147513.16 |
| 999726863 | 152959.42 |
| 501381987 | 161500 |
| 501252346 | 183361.81 |
| 500696464 | 190655.37 |
| 1563007 | 194029.93 |
| 501380516 | 214896.68 |
| 999655674 | 218455 |
| 501417939 | 224283.38 |
| 500776806 | 231937.17 |
| 500106287 | 238608.18 |
| 501616050 | 265959.82 |
| 501423038 | 268420.77 |
| 998390142 | 269047.3 |
| 999711146 | 275500 |
| 501556669 | 279729.37 |
| 500700236 | 287943.85 |
| 502322482 | 291368.87 |
| 500918533 | 293121.53 |
| 500455962 | 315000 |
| 500494157 | 320711.82 |
| 501526260 | 322328.51 |
| 501024874 | 338848.08 |
| 500848949 | 345493.5 |
| 502394974 | 354464.73 |
| 999891328 | 382326.84 |
| 500583604 | 430522.28 |

| ID | CURRENT BALANCE |
|---|---|
| 500466932 | 468000 |
| 501378062 | 469472.63 |
| 501474149 | 493000 |
| 500753761 | 494574.37 |
| 501367705 | 574973.02 |
| 501235539 | 603932.78 |
| 501299367 | 609682.91 |
| 500307358 | 623770.09 |
| 500813056 | 762704.66 |
| 501582018 | 241875 |
| 500074787 | 108821.58 |
| 501773221 | 119009.95 |
| 500629036 | 440000 |
| 501504347 | 443956.56 |
| 500453249 | 569824.31 |
| 501456168 | 574000 |
| 500062419 | 47212.24 |
| 999863634 | 47355.23 |
| 121137 | 47424.16 |
| 121641 | 48154.93 |
| 998079143 | 48432.49 |
| 998066630 | 49127.18 |
| 500564915 | 49558.03 |
| 500568911 | 50991.59 |
| 121255 | 51215.94 |
| 500546151 | 51348.67 |
| 999937144 | 52702.18 |
| 500444023 | 54031.07 |
| 501111632 | 59912.93 |
| 122671 | 59999.59 |
| 998334599 | 61924.2 |
| 2381134 | 62105.97 |
| 998202471 | 63068.72 |
| 998769390 | 64335.78 |
| 500569480 | 64654.48 |
| 501133624 | 65801.54 |
| 500225712 | 65829.44 |
| 500870191 | 66000 |
| 998069855 | 66342.32 |
| 500526577 | 68800 |
| 9031300 | 69032.98 |
| 500003122 | 71050 |
| 7490178 | 71052.92 |
| 501379559 | 71204.44 |
| 502351043 | 72080.81 |
| 998750431 | 73009.61 |
| 501261798 | 73200 |
| 501099808 | 76601.23 |
| 500410261 | 77410.47 |
| 501440352 | 78189.08 |
| 501319471 | 79980.5 |

| ID | CURRENT BALANCE |
| --- | --- |
| 999945469 | 80404.3 |
| 550032643 | 80510.74 |
| 500736499 | 81028.67 |
| 2551932 | 82326.34 |
| 501343210 | 83607.45 |
| 122701 | 84937.56 |
| 999597265 | 87158.13 |
| 998856985 | 88237.38 |
| 7623222 | 89174.25 |
| 500675781 | 91037.38 |
| 550042259 | 91556.46 |
| 501488604 | 92595.18 |
| 500231092 | 93920.24 |
| 500839591 | 94024.52 |
| 500122918 | 94045.24 |
| 3131022 | 94545.19 |
| 500786562 | 95493.13 |
| 998026201 | 96411.8 |
| 501577824 | 98210.17 |
| 501488461 | 100096.45 |
| 999811688 | 101909.61 |
| 500951782 | 103120 |
| 123339 | 103746.01 |
| 999748050 | 103802.37 |
| 122387 | 103988.58 |
| 500305170 | 104528.87 |
| 501237303 | 105198.27 |
| 501141249 | 105209.95 |
| 999639153 | 105987.32 |
| 9511375 | 106145.8 |
| 501488517 | 107494.8 |
| 501839445 | 108081.22 |
| 501488840 | 108764.11 |
| 501488333 | 108950.72 |
| 501488784 | 108967.91 |
| 500458419 | 109125 |
| 999706478 | 109532.47 |
| 500812180 | 110076.84 |
| 998986460 | 110974.36 |
| 500555467 | 112393.02 |
| 501321937 | 114711.62 |
| 500602837 | 115106.76 |
| 121991 | 118244.86 |
| 500602607 | 118500 |
| 999892263 | 118699.96 |
| 501263581 | 118839.15 |
| 981182962 | 119332.45 |
| 500376766 | 119900 |
| 500579489 | 119998.99 |
| 501598565 | 120056.93 |
| 999772634 | 120060 |

| ID | CURRENT BALANCE |
|---|---|
| 500660808 | 123063.75 |
| 500468554 | 123079.87 |
| 500827592 | 123200 |
| 500827707 | 123200 |
| 999175430 | 123393.83 |
| 501222347 | 124150 |
| 501222361 | 124150 |
| 501222393 | 124150 |
| 500381462 | 124441.65 |
| 501177445 | 124629.79 |
| 500296201 | 125299.29 |
| 500833209 | 125359.31 |
| 500301731 | 125599.8 |
| 501221065 | 125760 |
| 501222357 | 125760 |
| 501222363 | 125760 |
| 501222366 | 125760 |
| 501222388 | 125760 |
| 500021946 | 127607.32 |
| 500261886 | 128861.26 |
| 500569298 | 129000 |
| 999085816 | 131403.17 |
| 500253205 | 134355.21 |
| 500559013 | 134754.5 |
| 500375967 | 135962.5 |
| 500420400 | 136104.55 |
| 501266884 | 136441.99 |
| 501266885 | 136560.85 |
| 999807079 | 136675.97 |
| 501233868 | 137007.28 |
| 501266886 | 137107.63 |
| 501259842 | 137852.63 |
| 500437251 | 137976.61 |
| 500437386 | 137976.61 |
| 500340675 | 138223.91 |
| 501266887 | 138623.54 |
| 501266883 | 138743.49 |
| 501233894 | 138923.72 |
| 501233926 | 139085.46 |
| 980105561 | 139513.9 |
| 500933097 | 140091.67 |
| 123185 | 140518.74 |
| 501566559 | 140539.69 |
| 500955001 | 141942.71 |
| 500957346 | 141942.71 |
| 501402759 | 142286.57 |
| 998723955 | 142833.43 |
| 501208174 | 143910.56 |
| 123465 | 144429.19 |
| 500589816 | 145240.49 |
| 121866 | 145257.34 |

| ID | CURRENT BALANCE |
|---|---|
| 999809610 | 145404.04 |
| 500114032 | 145737.45 |
| 999734155 | 146045.89 |
| 500256953 | 146110 |
| 999624958 | 146398.71 |
| 501616854 | 147631.42 |
| 501865525 | 147830.93 |
| 502366019 | 148372.14 |
| 502384874 | 148372.14 |
| 502384875 | 148372.14 |
| 502384876 | 148372.14 |
| 502384879 | 148372.14 |
| 502384871 | 148500.98 |
| 500118158 | 149960 |
| 500778398 | 150101.84 |
| 500465125 | 150557.69 |
| 500518641 | 150599 |
| 501557654 | 151260.55 |
| 501558431 | 151260.55 |
| 123460 | 152406.56 |
| 998194798 | 152751.73 |
| 122753 | 153571.65 |
| 500824776 | 153923.01 |
| 501295153 | 154330.42 |
| 500103543 | 154787.99 |
| 501500684 | 155199.86 |
| 500882853 | 155696 |
| 500171202 | 155741.33 |
| 501373320 | 157861.71 |
| 501107631 | 158356.23 |
| 501534498 | 158958.13 |
| 122698 | 159061.23 |
| 500517458 | 159341.89 |
| 500935527 | 159656.86 |
| 999783400 | 159937.04 |
| 500611419 | 160415 |
| 999826318 | 162599.99 |
| 999748312 | 163053.26 |
| 9481949 | 163108.35 |
| 501233920 | 164184.67 |
| 122690 | 164463.06 |
| 500822618 | 164504.18 |
| 500776642 | 165900 |
| 501703206 | 166008.01 |
| 500383237 | 167067.24 |
| 500684029 | 167112.62 |
| 500459064 | 167849.58 |
| 500528579 | 167863.27 |
| 501477344 | 168000 |
| 500393795 | 168000 |
| 501390060 | 168216.07 |

| ID | CURRENT BALANCE |
|---|---|
| 500880290 | 168525.66 |
| 123568 | 168561.67 |
| 502191739 | 168750 |
| 501154527 | 169200 |
| 500266043 | 171545.55 |
| 500820451 | 171794.25 |
| 123213 | 172097.53 |
| 500788697 | 172185.55 |
| 501105198 | 172376.12 |
| 501154213 | 172500 |
| 501557432 | 173371.21 |
| 500742444 | 173519.91 |
| 500378658 | 174529.26 |
| 500674655 | 174776.43 |
| 999903690 | 174884.47 |
| 500687704 | 176000 |
| 500698046 | 176250 |
| 501134114 | 176376.19 |
| 500345758 | 177919.77 |
| 500707301 | 177920 |
| 501704966 | 178605.52 |
| 123439 | 179322.16 |
| 500754857 | 179458.18 |
| 501037805 | 180639.07 |
| 500558555 | 181151.16 |
| 501056763 | 181593.62 |
| 500552958 | 181879.43 |
| 501404057 | 183346.78 |
| 500764895 | 183700 |
| 501364150 | 184822.08 |
| 500213868 | 185000 |
| 999740983 | 186723.94 |
| 500046130 | 187765.05 |
| 500781535 | 187950 |
| 500701786 | 187998.18 |
| 500927914 | 188500 |
| 500021815 | 188787.42 |
| 501308787 | 190000 |
| 999572888 | 191132.17 |
| 500757960 | 191315.88 |
| 500289187 | 191472.23 |
| 501006306 | 192282.38 |
| 501189191 | 192520.1 |
| 501089760 | 193855.5 |
| 501563934 | 194112.39 |
| 501154443 | 195497.46 |
| 501542102 | 195891.75 |
| 501519526 | 196000 |
| 500439619 | 197590.98 |
| 500871745 | 198043.36 |
| 501421920 | 198059.26 |

| ID | CURRENT BALANCE |
|---|---|
| 999970293 | 198759.44 |
| 123143 | 198779.91 |
| 500774534 | 198900 |
| 501257102 | 198990 |
| 500900163 | 199562.29 |
| 500917236 | 199705.7 |
| 500688111 | 200242.88 |
| 501333104 | 200418.8 |
| 500511322 | 200754.49 |
| 501133123 | 202090.59 |
| 999947646 | 204793.73 |
| 501404999 | 205685.54 |
| 500909617 | 205741.53 |
| 501242473 | 205992.44 |
| 500345991 | 206244.56 |
| 500388924 | 206454.83 |
| 500931938 | 206588.32 |
| 500617973 | 207941.5 |
| 500857533 | 209147.16 |
| 999434598 | 209223.39 |
| 501277872 | 209317.66 |
| 500108255 | 209936.01 |
| 501592137 | 210630.95 |
| 501272450 | 211500 |
| 501259785 | 212000 |
| 500948396 | 212777.76 |
| 500529934 | 213466.09 |
| 501583507 | 213655.22 |
| 501258748 | 213937.58 |
| 500901277 | 214240 |
| 501281358 | 214597.32 |
| 500345129 | 214738.16 |
| 999955061 | 216666.82 |
| 501354796 | 217000 |
| 500739930 | 218341.99 |
| 501467051 | 219583.33 |
| 999931020 | 219951.87 |
| 500835651 | 220787.94 |
| 501323333 | 221305.62 |
| 500513732 | 221376.93 |
| 500267078 | 221693.21 |
| 500836724 | 221918.53 |
| 501640037 | 225752.75 |
| 500685543 | 228250 |
| 500739984 | 228348.18 |
| 501013996 | 228834.43 |
| 500627301 | 229600 |
| 500974626 | 230430.27 |
| 500745384 | 231000 |
| 501382014 | 231080.26 |
| 502175258 | 231489.55 |

| ID | CURRENT BALANCE |
|---|---|
| 501055805 | 234651.48 |
| 501304020 | 235031.08 |
| 501352380 | 235547.9 |
| 501623520 | 235600 |
| 501333484 | 235900 |
| 501373110 | 236000 |
| 500419083 | 236427.08 |
| 501519734 | 236573.35 |
| 500548411 | 236714.24 |
| 501494386 | 237405 |
| 500384822 | 238410 |
| 500776422 | 239431.73 |
| 500770244 | 239807.97 |
| 501575384 | 239875.66 |
| 500645918 | 240000 |
| 500408608 | 240000 |
| 500895869 | 240000 |
| 501232168 | 241232.56 |
| 501295765 | 241410.87 |
| 501354905 | 242266.2 |
| 501214839 | 242592.88 |
| 500792579 | 244627.29 |
| 500225868 | 244866.34 |
| 550057180 | 245061.27 |
| 500969130 | 245345.68 |
| 500804457 | 247100 |
| 501425098 | 247386.59 |
| 999713920 | 247726.02 |
| 999898041 | 248672.52 |
| 500370800 | 249029.67 |
| 500777672 | 249390.76 |
| 500719043 | 251194.84 |
| 501687604 | 251910 |
| 501104441 | 252879.83 |
| 500622590 | 252937.23 |
| 500876141 | 255200 |
| 123592 | 257349.52 |
| 500775303 | 257600 |
| 502362809 | 257767.36 |
| 500489502 | 259106.73 |
| 500017388 | 259237.13 |
| 500210190 | 259900 |
| 501226303 | 260526.05 |
| 500772581 | 260791.1 |
| 501036681 | 262902.03 |
| 501134393 | 262931.11 |
| 500939102 | 263826.7 |
| 999986405 | 263832.9 |
| 501361117 | 264000 |
| 501151237 | 264437.39 |
| 501295587 | 265711.94 |

| ID | CURRENT BALANCE |
|---|---|
| 500822790 | 266320 |
| 500786032 | 267139.8 |
| 999484228 | 267894.17 |
| 500416633 | 268150.94 |
| 500750524 | 268661.92 |
| 500923878 | 269178.04 |
| 501542864 | 270000 |
| 501549764 | 270000 |
| 500587137 | 270323.81 |
| 501609628 | 270546.8 |
| 500333745 | 270930.77 |
| 999033477 | 271804.26 |
| 500101092 | 273440.62 |
| 501202952 | 274997.52 |
| 501270022 | 276000 |
| 500231146 | 278014.48 |
| 500628946 | 279000 |
| 999864728 | 279000 |
| 999739170 | 279421.53 |
| 500863987 | 280000 |
| 500341249 | 280000 |
| 501266956 | 281209.27 |
| 501264588 | 281535.53 |
| 500366004 | 281810.76 |
| 501567234 | 282412.29 |
| 501807270 | 283286.53 |
| 501441874 | 283437.53 |
| 500832643 | 283450 |
| 501535957 | 286150 |
| 501220173 | 286357.44 |
| 500935692 | 287921.98 |
| 500851584 | 288000 |
| 501439133 | 290476.61 |
| 501464535 | 291516.56 |
| 501048436 | 293041.35 |
| 500712079 | 295725.4 |
| 500441338 | 299676.48 |
| 501326403 | 299812.32 |
| 500830212 | 300000 |
| 501180944 | 300130.69 |
| 501491192 | 303105.63 |
| 500821402 | 303321.87 |
| 500788815 | 303750 |
| 500301331 | 305820 |
| 501126326 | 305952.77 |
| 123450 | 310066.88 |
| 500122978 | 312408.47 |
| 999494389 | 312951.31 |
| 999890819 | 313583.02 |
| 500222371 | 316646.63 |
| 501232741 | 318475.56 |

| ID | CURRENT BALANCE |
|---|---|
| 501021235 | 319915 |
| 501440817 | 320740.42 |
| 500715508 | 320869.92 |
| 500342161 | 321749.92 |
| 999669265 | 322705.74 |
| 500370971 | 323999.29 |
| 501248376 | 327135.68 |
| 501298434 | 327556.38 |
| 501477766 | 327979.29 |
| 999971082 | 329186.8 |
| 500392942 | 329207.98 |
| 500593394 | 329925 |
| 500691171 | 331960 |
| 501156515 | 333106.19 |
| 500472172 | 333291.67 |
| 500896189 | 333560.65 |
| 502299378 | 333704.08 |
| 500895401 | 333750 |
| 501801805 | 335000 |
| 500603213 | 336606.71 |
| 500646548 | 337227.1 |
| 501492692 | 337451.78 |
| 501328475 | 339408.65 |
| 500818689 | 339556.55 |
| 500588119 | 339708.9 |
| 500837926 | 341970 |
| 500648116 | 342000 |
| 500455921 | 343796.81 |
| 500435293 | 343858.69 |
| 500246165 | 346939.95 |
| 500725155 | 348310.86 |
| 501083141 | 350818.37 |
| 500919121 | 352507.96 |
| 501540685 | 352763.48 |
| 501532066 | 354203.45 |
| 501562969 | 354603.51 |
| 500022388 | 354772.35 |
| 500827038 | 358153.27 |
| 500867677 | 359000 |
| 500779294 | 359123.35 |
| 500805443 | 359462.27 |
| 501853996 | 359739.47 |
| 500803441 | 363440.75 |
| 501528959 | 366204.77 |
| 501491596 | 366342.95 |
| 500657480 | 366567.21 |
| 501737234 | 367779.67 |
| 501541086 | 367814.17 |
| 501449419 | 368011.92 |
| 501286512 | 369550 |
| 501367308 | 370000 |

| ID | CURRENT BALANCE |
|---|---|
| 500710815 | 371963.78 |
| 999896237 | 372908.56 |
| 500669811 | 374457.17 |
| 500514706 | 374733.98 |
| 500752811 | 375000 |
| 501103515 | 376463.78 |
| 500664840 | 378252.18 |
| 500340027 | 378745.58 |
| 500672571 | 379960.62 |
| 501456485 | 381474.28 |
| 501415632 | 381759.47 |
| 500708038 | 382927.07 |
| 999812374 | 383390.4 |
| 502653587 | 383828.03 |
| 500615273 | 383900 |
| 500192337 | 386211.24 |
| 500328721 | 389612.75 |
| 501243083 | 389825.29 |
| 501420205 | 397345.9 |
| 500294903 | 399050.04 |
| 500369032 | 400105.5 |
| 500920501 | 401072.26 |
| 500379752 | 402296.24 |
| 999951889 | 402422.13 |
| 501761230 | 403108.25 |
| 500295511 | 403278.38 |
| 500838941 | 404000 |
| 501226466 | 404281 |
| 500797580 | 406373.01 |
| 501842566 | 410147.52 |
| 500372665 | 412422.36 |
| 500741287 | 412878.37 |
| 500391711 | 416000 |
| 500644952 | 418510.38 |
| 123622 | 418890.78 |
| 501236994 | 420000 |
| 501495010 | 420000 |
| 500467265 | 423750 |
| 501281795 | 425983.75 |
| 500687861 | 426075.83 |
| 500677174 | 426214.01 |
| 500576497 | 426688.24 |
| 501367425 | 427191.04 |
| 501463130 | 428868.49 |
| 501324090 | 428957.1 |
| 999828508 | 430431.77 |
| 501406735 | 431418.84 |
| 500668928 | 432645.63 |
| 501429747 | 434551.97 |
| 501270514 | 434614.15 |
| 501374095 | 435000 |

| ID | CURRENT BALANCE |
|---|---|
| 999900309 | 436680.81 |
| 500296511 | 439578.79 |
| 501170353 | 439818.8 |
| 501275427 | 439997.98 |
| 501323902 | 442253.83 |
| 501558324 | 443340.78 |
| 501558133 | 443510 |
| 500816650 | 444687.92 |
| 999967941 | 444954.78 |
| 500594268 | 446250 |
| 500596257 | 446497.57 |
| 501412177 | 447502.47 |
| 500781046 | 448000 |
| 501551751 | 449127.23 |
| 999841752 | 449250 |
| 501419390 | 449900 |
| 500250335 | 450000 |
| 500890315 | 450870.81 |
| 501431246 | 451255.16 |
| 501523367 | 452363.85 |
| 500855183 | 453000 |
| 501477923 | 455622 |
| 501450015 | 455968.76 |
| 501391363 | 457174.13 |
| 501531220 | 461326.27 |
| 500806535 | 461762.41 |
| 501491580 | 465395.76 |
| 501267364 | 465500 |
| 501412577 | 465793.27 |
| 501482854 | 466024.97 |
| 501344752 | 466511.37 |
| 500881573 | 470553.03 |
| 500302435 | 472365.17 |
| 501478820 | 473550 |
| 501181361 | 475200 |
| 501461999 | 477328.61 |
| 501589721 | 477476.96 |
| 500107228 | 478368.51 |
| 500943375 | 478913.54 |
| 501398220 | 478922.32 |
| 501406672 | 478977.57 |
| 501269290 | 479500 |
| 999889830 | 479945.12 |
| 500730806 | 480000 |
| 500293011 | 483462.14 |
| 501472680 | 483726.61 |
| 501412840 | 488000 |
| 501408315 | 489523.19 |
| 500481406 | 491296.87 |
| 501443543 | 491306.26 |
| 500466314 | 491875.03 |

| ID | CURRENT BALANCE |
|---|---|
| 501239446 | 492152.77 |
| 501530339 | 493517.69 |
| 502700260 | 493913.9 |
| 500385131 | 495000 |
| 500754041 | 497614.28 |
| 501321163 | 497700.62 |
| 501490608 | 499709.02 |
| 501300187 | 499887.18 |
| 999750605 | 500000 |
| 501342659 | 500000 |
| 500772565 | 500000 |
| 501334042 | 500064.32 |
| 501458921 | 500842.58 |
| 501367112 | 504238.37 |
| 501427292 | 506736.61 |
| 501361536 | 509151.59 |
| 501496113 | 510881.91 |
| 501442128 | 512500 |
| 501450465 | 515416.08 |
| 501538231 | 518834.99 |
| 500423013 | 521223.33 |
| 501529637 | 522213.71 |
| 501496241 | 524000 |
| 501366847 | 525000 |
| 501291432 | 525683.09 |
| 501689029 | 525800 |
| 501514537 | 529062.15 |
| 502084992 | 529165.71 |
| 123485 | 530000 |
| 501394647 | 530187.33 |
| 501443099 | 530599.41 |
| 501274940 | 531252.95 |
| 500479469 | 532000 |
| 500750637 | 535797.01 |
| 501244524 | 536976.99 |
| 501238280 | 539665.42 |
| 123445 | 540741.21 |
| 500398680 | 541981.78 |
| 500351523 | 543428.04 |
| 501455874 | 543871.72 |
| 501305194 | 548354.3 |
| 501506251 | 549256.53 |
| 501547072 | 551550.15 |
| 500715225 | 555000 |
| 500779436 | 555698.02 |
| 501354810 | 556450 |
| 501270778 | 558264.52 |
| 501463894 | 560000 |
| 501401169 | 561023.56 |
| 501478424 | 563527.36 |
| 500826216 | 565600 |

| ID | CURRENT BALANCE |
|---|---|
| 501471243 | 566353.76 |
| 501460649 | 568087.04 |
| 501212125 | 571942.22 |
| 501586308 | 574000 |
| 123438 | 574669.59 |
| 501338506 | 575721.04 |
| 500889727 | 575765.91 |
| 500556647 | 577600 |
| 501243237 | 580073.68 |
| 123441 | 580312.38 |
| 501203044 | 585738.22 |
| 501326994 | 587081.83 |
| 501535305 | 587200 |
| 123410 | 590009.59 |
| 501327265 | 590234.96 |
| 501394409 | 592000 |
| 500942649 | 592500 |
| 501264019 | 593804.09 |
| 501485684 | 593991.25 |
| 502316870 | 595396.23 |
| 501453166 | 597199.89 |
| 501480749 | 600826.8 |
| 500368877 | 613943.82 |
| 500601952 | 615073.35 |
| 502330703 | 615519.87 |
| 501440799 | 615988.19 |
| 501512424 | 617500 |
| 501275660 | 617712.42 |
| 501527791 | 620000 |
| 501498322 | 621887.19 |
| 500317223 | 622963.96 |
| 501050626 | 629105.38 |
| 501514428 | 629953.45 |
| 501330827 | 630259.13 |
| 501463632 | 633559.52 |
| 501276731 | 633956.59 |
| 501492507 | 636136.85 |
| 501071681 | 636299.84 |
| 500703689 | 637500 |
| 500433361 | 637500 |
| 501353872 | 641209.51 |
| 501552970 | 641600 |
| 501556173 | 643262.59 |
| 500609353 | 645887.37 |
| 999989473 | 646221.5 |
| 500136781 | 648706.67 |
| 501389521 | 649052.21 |
| 501301850 | 649723.29 |
| 501499835 | 649999.99 |
| 999864544 | 650000 |
| 501461031 | 650000 |

| ID | CURRENT BALANCE |
|---|---|
| 500896604 | 650000 |
| 501587862 | 650000 |
| 501506700 | 653573.78 |
| 500826916 | 656261.51 |
| 501523081 | 656743.95 |
| 501309570 | 657551.7 |
| 501294953 | 659562.66 |
| 502156884 | 669494 |
| 501454808 | 670000 |
| 501491885 | 670739.66 |
| 501524375 | 671000 |
| 501375752 | 675000 |
| 501287579 | 676000 |
| 501239119 | 676340.13 |
| 501269645 | 679815.73 |
| 501418594 | 682730.15 |
| 501349755 | 698272.39 |
| 500851020 | 699664.62 |
| 550172909 | 700853.36 |
| 501426817 | 710399.48 |
| 501300797 | 712500 |
| 501411208 | 712500 |
| 501388359 | 714582.98 |
| 501432642 | 741000 |
| 500298110 | 749989.97 |
| 501375764 | 756093.53 |
| 500342890 | 759926.82 |
| 501467463 | 816694 |
| 501386681 | 820000 |
| 501321459 | 835271.59 |
| 501254836 | 845000 |
| 501474426 | 849720.83 |
| 501569763 | 850545 |
| 501446964 | 862500 |
| 501484744 | 895403.31 |
| 501290696 | 910184.01 |
| 501493244 | 917074.7 |
| 501385893 | 917673 |
| 501349645 | 936150 |
| 501580446 | 943926.01 |
| 501370937 | 981161.31 |
| 501261630 | 991986.14 |
| 501438743 | 999718.75 |
| 501409649 | 1000000 |
| 501417800 | 1000000 |
| 501246257 | 1059879.61 |
| 501232657 | 1064147.92 |
| 501159752 | 1064839.2 |
| 501358272 | 1081576.79 |
| 501517758 | 1096116.2 |
| 500937982 | 1185498.99 |

| ID | CURRENT BALANCE |
|---|---|
| 501332791 | 1190000 |
| 501028566 | 1221961.64 |
| 500747857 | 1227710.37 |
| 501293852 | 1763850.54 |
| 501271497 | 2496682.06 |
| 500992736 | 4643588.49 |
| 501337998 | 56270.58 |
| 999771125 | 150224.94 |
| 501373240 | 278148.74 |
| 500384565 | 375678.56 |
| 501398561 | 399007.78 |
| 500321789 | 421494.26 |
| 501457850 | 519280.95 |
| 501289890 | 529232.76 |
| 501245542 | 544336.67 |
| 501281177 | 1645000 |
| 501286715 | 430497.76 |
| 500576981 | 463000 |
| 501460215 | 649921.54 |
| 501539507 | 870057.85 |
| 501548993 | 992241.69 |
| 980035388 | 52452.23 |
| 998987477 | 86618.77 |
| 999688919 | 89350.84 |
| 550129406 | 99596.34 |
| 999773463 | 110996.21 |
| 500546232 | 125424.85 |
| 999517763 | 126244.27 |
| 999906059 | 129148.58 |
| 999845364 | 145502.23 |
| 500143457 | 150000 |
| 500849537 | 175049.27 |
| 500870990 | 178174.86 |
| 500840217 | 202081.19 |
| 500902141 | 289270.55 |
| 501535626 | 422243.09 |
| 501445808 | 523500 |
| 999954166 | 559569.22 |
| 501231601 | 779178.44 |
| 502469959 | 81423.85 |
| 123221 | 119980.06 |
| 500498358 | 132532.41 |
| 501667801 | 136016.34 |
| 501414183 | 170413.87 |
| 502199902 | 186413.82 |
| 502238744 | 211046.27 |
| 550095517 | 222229.33 |
| 501514605 | 234508.26 |
| 501712478 | 246855.97 |
| 999689357 | 260110.9 |
| 999759136 | 282597.11 |

| ID | CURRENT BALANCE |
|---|---|
| 501284108 | 323202.85 |
| 500407737 | 394871.34 |
| 501305723 | 451717.25 |
| 501535728 | 528367.83 |
| 999851920 | 649867.04 |
| 998145267 | 100315.12 |
| 550148498 | 146919.21 |
| 501252750 | 369942.09 |
| 500908510 | 344668.74 |
| 500717096 | 422637.03 |
| 500750375 | 463771.86 |
| 501489152 | 557550 |
| 998103243 | 79909.25 |
| 501500916 | 103943.69 |
| 122780 | 129537.18 |
| 999615671 | 144991.02 |
| 500789347 | 146807.75 |
| 999255588 | 159693.71 |
| 500904668 | 167589.23 |
| 501812884 | 170129.64 |
| 500719864 | 190300 |
| 500261023 | 214310.48 |
| 500476025 | 214800 |
| 501509419 | 287911.5 |
| 500270630 | 302000 |
| 501454889 | 325363.18 |
| 500953117 | 397200 |
| 502479165 | 402819.91 |
| 501325382 | 484428.85 |
| 501232342 | 494962.65 |
| 501448198 | 541662.77 |
| 501390180 | 562795.63 |
| 500852682 | 650000 |
| 501502152 | 650000 |
| 501456861 | 661795.65 |
| 501562116 | 1000000 |
| 550152599 | 1287211.51 |
| 500733043 | 40787.06 |
| 9481558 | 41245.7 |
| 500733074 | 41502.69 |
| 500493575 | 42971.61 |
| 950208537 | 46010.04 |
| 940005805 | 46337.68 |
| 1421767 | 46507.58 |
| 500932613 | 46993.04 |
| 500493517 | 47216.23 |
| 500784613 | 47247.03 |
| 500521133 | 47633.19 |
| 998104106 | 50728.39 |
| 981143330 | 51437.62 |
| 500103317 | 52216.86 |

| ID | CURRENT BALANCE |
|---|---|
| 2621172 | 52491.45 |
| 501823051 | 53350.84 |
| 998976778 | 57438.79 |
| 500185016 | 59047.88 |
| 999628482 | 59331.12 |
| 940073310 | 59863.2 |
| 500413049 | 61584.28 |
| 500856922 | 61600 |
| 500321999 | 62941.16 |
| 999493645 | 65153.86 |
| 998144181 | 67547.76 |
| 500813615 | 71600 |
| 500917475 | 73200 |
| 550067401 | 73254.82 |
| 501528125 | 73459.51 |
| 501034193 | 74885.43 |
| 500536287 | 75408.27 |
| 500364413 | 78400 |
| 999695310 | 79633.59 |
| 501568217 | 81000 |
| 122733 | 81617.23 |
| 981116411 | 84598.45 |
| 500412548 | 86400 |
| 6252171 | 87248.94 |
| 501360386 | 89676.08 |
| 500410781 | 95175.7 |
| 981194634 | 95183.66 |
| 501227712 | 96393.55 |
| 501455038 | 100636.85 |
| 500587113 | 100969.64 |
| 500052293 | 101815.35 |
| 999742827 | 103095.81 |
| 500703917 | 103100 |
| 999733959 | 103783.57 |
| 999704481 | 103857.86 |
| 998009314 | 104486.06 |
| 501250254 | 106510.55 |
| 500716386 | 108377.66 |
| 500793858 | 108750 |
| 6730085 | 110121.31 |
| 501568894 | 110527.27 |
| 500612957 | 110966.89 |
| 500854657 | 111120 |
| 501416718 | 112172.59 |
| 1691362 | 112375.09 |
| 501189484 | 112428.03 |
| 501370893 | 113000 |
| 999449302 | 115426.19 |
| 999790704 | 115609.49 |
| 500469657 | 115636.36 |
| 500287747 | 116000 |

| ID | CURRENT BALANCE |
|---|---|
| 500806232 | 116997.81 |
| 500326688 | 117636.85 |
| 501106977 | 118218.56 |
| 501216444 | 119898.98 |
| 123392 | 119982.69 |
| 500859833 | 120041.36 |
| 500945533 | 121006.52 |
| 999698347 | 121615.16 |
| 500363823 | 122000 |
| 500116999 | 123310.59 |
| 500804383 | 123361.71 |
| 500803084 | 123879.23 |
| 999976266 | 124124.51 |
| 500264826 | 124299.39 |
| 123623 | 124341.96 |
| 501610646 | 125221.07 |
| 500174887 | 125311.98 |
| 501693106 | 125717.64 |
| 500720299 | 125999.98 |
| 500339034 | 126000 |
| 500904132 | 126376.01 |
| 500501457 | 129629.44 |
| 999856160 | 130350.7 |
| 500908465 | 132257.99 |
| 500951463 | 133166.37 |
| 999926809 | 133781.81 |
| 500584912 | 134100 |
| 500263939 | 134340 |
| 501555662 | 134438.81 |
| 4590143 | 134869.8 |
| 501264752 | 134999.99 |
| 500871798 | 135021.68 |
| 502035512 | 135920 |
| 500728333 | 136000 |
| 123120 | 137355.35 |
| 501795167 | 138288.85 |
| 500627182 | 138811.37 |
| 999374844 | 139060.74 |
| 500576811 | 139196.06 |
| 500360108 | 139628.19 |
| 501404194 | 141149 |
| 501961784 | 141162.01 |
| 501231025 | 142500 |
| 999919216 | 142500 |
| 500548526 | 143000 |
| 999937266 | 143222.68 |
| 500488292 | 143624.02 |
| 500882067 | 143959.5 |
| 501526072 | 144000 |
| 500162152 | 144519.65 |
| 123008 | 146667.67 |

| ID | CURRENT BALANCE |
|---|---|
| 501318841 | 148000 |
| 122721 | 148600.76 |
| 500766221 | 149562.6 |
| 500761864 | 150000 |
| 501791215 | 150023.32 |
| 500735446 | 150083.7 |
| 500795016 | 150125.83 |
| 500378227 | 150173.11 |
| 500927543 | 150199.99 |
| 999846990 | 151150.28 |
| 500907854 | 151420 |
| 500807863 | 152134.86 |
| 501246940 | 155000 |
| 500796306 | 155958.56 |
| 501789051 | 156515.1 |
| 501233648 | 156611.7 |
| 501843737 | 156780.89 |
| 500879235 | 157212.74 |
| 999876581 | 157500 |
| 500011863 | 159805.31 |
| 500662438 | 159841.61 |
| 501608465 | 161250 |
| 123005 | 161945.85 |
| 999745028 | 161948.11 |
| 501006017 | 162767.27 |
| 500924253 | 164000 |
| 501711468 | 165176.88 |
| 500757491 | 167974.99 |
| 500758013 | 168000 |
| 501550422 | 169550 |
| 999803318 | 170272.13 |
| 501055330 | 170688.48 |
| 500163537 | 170895.18 |
| 500298986 | 171522.52 |
| 501441082 | 171752.99 |
| 501545381 | 172000 |
| 500060654 | 172359.39 |
| 500906153 | 173857.08 |
| 501403724 | 175043.64 |
| 501415537 | 175043.94 |
| 999755763 | 175325.27 |
| 500885237 | 175717.9 |
| 500767090 | 175990.95 |
| 500714350 | 175999.65 |
| 502668077 | 176656.76 |
| 500752801 | 177296.5 |
| 500319413 | 177346.57 |
| 500461485 | 178500 |
| 500588508 | 179579.45 |
| 501273026 | 179993.37 |
| 500793538 | 180000 |

| ID | CURRENT BALANCE |
|---|---|
| 501442337 | 180124.87 |
| 500560700 | 183340.11 |
| 500590892 | 185250 |
| 502032504 | 186218.59 |
| 501442018 | 187102.3 |
| 500408701 | 187150 |
| 500582764 | 187680.27 |
| 500750350 | 187900 |
| 999664914 | 188001.89 |
| 500791177 | 190000 |
| 500509980 | 190602.18 |
| 501574037 | 192032.89 |
| 500523917 | 192877 |
| 500400234 | 194105.79 |
| 501294664 | 194437.65 |
| 500514201 | 194507.86 |
| 500584790 | 194980.31 |
| 501014574 | 195000 |
| 501504848 | 195952.68 |
| 500562327 | 196000 |
| 500949654 | 196634.99 |
| 501269865 | 197600 |
| 500229916 | 198271.71 |
| 501077211 | 198685.05 |
| 500298549 | 198800 |
| 500843116 | 199834.42 |
| 500767919 | 199944.97 |
| 500870714 | 200000 |
| 501043739 | 200070.79 |
| 500891859 | 205000 |
| 501566442 | 205069.15 |
| 501039229 | 208084.65 |
| 550062804 | 208421.27 |
| 501964365 | 209213.13 |
| 501439185 | 209931.37 |
| 500308552 | 210002.59 |
| 500757330 | 210476.81 |
| 501956105 | 210692.57 |
| 500588228 | 211991.28 |
| 501934901 | 212988.26 |
| 500703511 | 213140 |
| 501673700 | 213258.41 |
| 501535354 | 213695.32 |
| 501345029 | 213869.33 |
| 500689552 | 215082.26 |
| 501512041 | 215969.1 |
| 500716623 | 216247.59 |
| 500928469 | 216685.04 |
| 501162367 | 218142.21 |
| 500948519 | 218774.99 |
| 501238244 | 218788.63 |

| ID | CURRENT BALANCE |
|---|---|
| 550160902 | 218952.14 |
| 501457525 | 219095.02 |
| 500696612 | 219495.43 |
| 500749511 | 219953.35 |
| 501764923 | 220295.76 |
| 501413639 | 220447.55 |
| 500704785 | 220945.16 |
| 501472622 | 223381.74 |
| 500518250 | 223956.57 |
| 500621582 | 224000 |
| 501426860 | 226069.53 |
| 500502249 | 227979.84 |
| 501232462 | 228472.83 |
| 500293174 | 230569.41 |
| 501390173 | 231594.1 |
| 501430786 | 233717.7 |
| 500183152 | 234335.19 |
| 500294050 | 235664.47 |
| 500881463 | 235985.69 |
| 500278885 | 236948.06 |
| 501547427 | 237180.48 |
| 500368953 | 237347.27 |
| 500411358 | 238095.98 |
| 501238766 | 239144.95 |
| 500112337 | 239938.75 |
| 500701498 | 240000 |
| 500336511 | 240000 |
| 500907058 | 240051.55 |
| 500014629 | 241273.7 |
| 999795357 | 241335.43 |
| 500446883 | 241493.77 |
| 501687243 | 242396.06 |
| 500943307 | 243300.14 |
| 500533181 | 244500 |
| 501690111 | 244971.88 |
| 500355145 | 246814.19 |
| 501199619 | 247423.21 |
| 500090790 | 250971.8 |
| 500407778 | 252684.05 |
| 501414233 | 255206.82 |
| 500679370 | 256000 |
| 501202287 | 257216.05 |
| 500416350 | 257680 |
| 501197048 | 258914.62 |
| 500432556 | 259644.75 |
| 500350517 | 262771.21 |
| 500206557 | 264082.53 |
| 500181101 | 264506.51 |
| 500462012 | 267934.4 |
| 999969165 | 268001.17 |
| 500736056 | 268222.14 |

| ID | CURRENT BALANCE |
|---|---|
| 501365784 | 268495.15 |
| 501327777 | 270623.3 |
| 500686531 | 271990 |
| 500885067 | 272276.67 |
| 501331051 | 273371.67 |
| 999927539 | 273372.06 |
| 500143577 | 274436.81 |
| 501350340 | 274491.33 |
| 501109610 | 275460.39 |
| 500952009 | 275770 |
| 500897231 | 276500 |
| 500550450 | 279950.62 |
| 501304660 | 280268.32 |
| 500821933 | 282000 |
| 500709286 | 283079.79 |
| 500697556 | 283453.01 |
| 500325270 | 283518.11 |
| 121890 | 284638.15 |
| 502329218 | 286221.18 |
| 500578948 | 287784.03 |
| 500301330 | 288195.84 |
| 500901137 | 288747.78 |
| 500365158 | 290862.15 |
| 500682199 | 291641.54 |
| 500691741 | 293250 |
| 501054599 | 293557.66 |
| 500463068 | 295044.7 |
| 500704919 | 295483.9 |
| 501752732 | 298485.64 |
| 501337316 | 299000 |
| 500284893 | 299695.89 |
| 500027894 | 299932.46 |
| 500330611 | 300000 |
| 500776079 | 304000 |
| 501341830 | 307694.56 |
| 500044398 | 308529.67 |
| 500321839 | 309741.78 |
| 500385374 | 310968.83 |
| 500872314 | 311412.45 |
| 500708013 | 311739.25 |
| 999754058 | 312578.79 |
| 500774162 | 312983.86 |
| 999838225 | 313429.22 |
| 501415988 | 313500.51 |
| 500489791 | 315176.66 |
| 500449416 | 317055.86 |
| 500562752 | 323631.51 |
| 500632008 | 325225.71 |
| 501447971 | 326271.88 |
| 500291604 | 326634.87 |
| 500462504 | 328298.71 |

| ID | CURRENT BALANCE |
|---|---|
| 500880789 | 331451.71 |
| 500142050 | 333500 |
| 500892901 | 334395.41 |
| 501520454 | 335614.76 |
| 501311460 | 336800 |
| 500875813 | 338000 |
| 501550156 | 338800 |
| 500729551 | 341650 |
| 501206368 | 344241.46 |
| 500842547 | 345127.93 |
| 500931723 | 345689.81 |
| 501337408 | 346199.41 |
| 501368852 | 350066.42 |
| 500179427 | 351633.34 |
| 500583082 | 351859.72 |
| 501532255 | 352000 |
| 999859770 | 352169.02 |
| 500555418 | 356044.74 |
| 500867550 | 356780 |
| 500768836 | 358773.17 |
| 500503390 | 359649.73 |
| 500834751 | 359650 |
| 500304811 | 360000 |
| 501376517 | 364491.03 |
| 500735576 | 366000 |
| 999686864 | 367858.89 |
| 500744671 | 371121.75 |
| 500795695 | 371907 |
| 500695379 | 371998.74 |
| 550171559 | 374385.13 |
| 500265579 | 374559.66 |
| 500462628 | 376000 |
| 500712469 | 376800 |
| 500728487 | 377937.28 |
| 500826529 | 379001.86 |
| 999867618 | 383993.39 |
| 500953236 | 384000 |
| 500253581 | 385046.05 |
| 501533644 | 385085.23 |
| 500231607 | 392115.85 |
| 500920876 | 392896.57 |
| 500803897 | 393077.37 |
| 123419 | 408000 |
| 500744696 | 408610.81 |
| 501365928 | 411920 |
| 501358227 | 415548.64 |
| 500630599 | 420000 |
| 500339550 | 420000 |
| 500653903 | 425000 |
| 501398568 | 425762.38 |
| 500111444 | 426715.06 |

| ID | CURRENT BALANCE |
|---|---|
| 501280253 | 426717.94 |
| 501461248 | 426721.03 |
| 500345028 | 429500 |
| 500805840 | 430371.67 |
| 500264616 | 430621.43 |
| 501540924 | 430666.59 |
| 501335186 | 431477.83 |
| 501383902 | 432250 |
| 501308688 | 434318.83 |
| 501282021 | 434698.36 |
| 501452732 | 436157 |
| 999342636 | 436647.26 |
| 500618570 | 437500 |
| 500818743 | 438184.37 |
| 500293563 | 440000 |
| 501590883 | 441629.88 |
| 550002356 | 443431.78 |
| 501381830 | 446349.67 |
| 500768825 | 447636.62 |
| 501308650 | 447773.58 |
| 500883464 | 449257.53 |
| 500219432 | 449576.62 |
| 500567382 | 450240.33 |
| 501176658 | 451004.52 |
| 500675423 | 452453.46 |
| 500492506 | 452599.94 |
| 501289047 | 454636.58 |
| 501512868 | 454687.57 |
| 501280513 | 457000 |
| 501295268 | 458927.41 |
| 500784292 | 460660.39 |
| 501277404 | 460903.13 |
| 501219544 | 464000 |
| 500563133 | 464898.32 |
| 501405374 | 465916.65 |
| 501257158 | 466392.24 |
| 501492519 | 470000 |
| 501449723 | 471386.77 |
| 500829003 | 471810.06 |
| 500583191 | 471940.43 |
| 501519088 | 472138.9 |
| 501409577 | 472240.02 |
| 500853568 | 472367.11 |
| 501420666 | 472419.6 |
| 501416948 | 472500 |
| 501232981 | 473508.54 |
| 501384222 | 475512.86 |
| 500525764 | 478000 |
| 500008100 | 478736.96 |
| 501341516 | 479031.87 |
| 501416089 | 479929.54 |

| ID | CURRENT BALANCE |
|---|---|
| 501381876 | 484546.32 |
| 501300753 | 485970.78 |
| 500731495 | 486725.22 |
| 501435949 | 486991.03 |
| 501530858 | 488000 |
| 500765921 | 492000 |
| 501475352 | 499850 |
| 500810031 | 500000 |
| 501309301 | 500000 |
| 500907704 | 500000 |
| 501201346 | 500659.12 |
| 501579413 | 502000 |
| 501524678 | 502276.73 |
| 500723400 | 502663.12 |
| 501566475 | 503175.56 |
| 501343760 | 503527.66 |
| 501337523 | 505644.57 |
| 501526364 | 507200 |
| 501394930 | 508200.9 |
| 501351647 | 509600 |
| 500653294 | 512000 |
| 501446075 | 512000 |
| 501361129 | 514250 |
| 501276544 | 515546.76 |
| 501373781 | 519180 |
| 501819243 | 523194.82 |
| 500853703 | 525308.34 |
| 500923033 | 526037.79 |
| 500305556 | 527227.51 |
| 999906373 | 528196.22 |
| 501813861 | 530595.13 |
| 500756059 | 532576.03 |
| 9542112 | 532643.23 |
| 501404381 | 534970.07 |
| 501450162 | 536100 |
| 501415802 | 539352.49 |
| 500717881 | 544000 |
| 500318729 | 552000 |
| 500640242 | 552703.9 |
| 501338934 | 553108.64 |
| 501332174 | 557200 |
| 500661963 | 557523.51 |
| 501317271 | 562144.74 |
| 500527909 | 562347.23 |
| 500923013 | 563579.79 |
| 501376263 | 564212.92 |
| 501451125 | 565585.02 |
| 501294491 | 572000 |
| 501459072 | 572000 |
| 500586396 | 572730.22 |
| 501547457 | 575096.79 |

| ID | CURRENT BALANCE |
|---|---|
| 501340989 | 589176.05 |
| 501231956 | 595000 |
| 500750255 | 595898.5 |
| 500445499 | 598028.13 |
| 500466991 | 598342.47 |
| 500630666 | 603365.79 |
| 501566765 | 605789.16 |
| 501443244 | 607795.65 |
| 501377022 | 612000 |
| 501535739 | 615087.24 |
| 500414990 | 616210.17 |
| 501605458 | 623085.1 |
| 501482627 | 624713.65 |
| 501599042 | 624830.96 |
| 501799388 | 624851.52 |
| 501461495 | 630988.42 |
| 501514229 | 636451.49 |
| 501595460 | 637296.66 |
| 501447140 | 637462.56 |
| 999856739 | 639624.26 |
| 501504047 | 645870.13 |
| 501539204 | 649865.99 |
| 501392632 | 649999.7 |
| 500518472 | 650000 |
| 500680221 | 650000 |
| 501429683 | 656362.87 |
| 501351778 | 656665.36 |
| 500689369 | 666481.59 |
| 501433522 | 676623.39 |
| 501188465 | 688000 |
| 501355643 | 696635.27 |
| 501469872 | 699534.53 |
| 501228864 | 699560.79 |
| 501580210 | 700000 |
| 501300252 | 709249.06 |
| 501281510 | 719453.62 |
| 501558538 | 720469.93 |
| 500555587 | 720734.19 |
| 500346370 | 732039.09 |
| 501445890 | 739993.41 |
| 501402552 | 744635.82 |
| 501318685 | 780000 |
| 501404478 | 862474.92 |
| 501330942 | 862500 |
| 501396451 | 889793.75 |
| 501381813 | 900000 |
| 501566729 | 903489.12 |
| 501314171 | 920000 |
| 501245736 | 929965.54 |
| 501512769 | 940880.01 |
| 501367584 | 971193.85 |

| ID | CURRENT BALANCE |
|---|---|
| 501528554 | 981265.33 |
| 501181601 | 982480.14 |
| 501418528 | 996355.57 |
| 501268088 | 1000000 |
| 501504996 | 1000000 |
| 501396117 | 1025000 |
| 501528021 | 1373832.75 |
| 501558476 | 1374049.99 |
| 999979096 | 1499981.18 |
| 501447070 | 1500000 |
| 501279880 | 3243722.07 |
| 500224869 | 141989.49 |
| 501361620 | 170411.18 |
| 999347514 | 105371.04 |
| 999701373 | 596534.47 |
| 501507945 | 207115.88 |
| 999846225 | 115146.96 |
| 501554174 | 672847.2 |
| 501444758 | 488339.17 |
| 501433813 | 313806.72 |
| 998402057 | 129020.4 |
| 998021198 | 81696.97 |
| 501224026 | 449634.11 |
| 3131017 | 50705.37 |
| 4951158 | 79948.35 |
| 500045559 | 275446.97 |

**EXHIBIT C**

FORM OF ASSIGNMENT AND CONVEYANCE

On this ___ day of _____, ____, Flagstar Bank, FSB as the Seller under that certain Mortgage Loan Purchase and Warranties Agreement, dated as of [_____], 2010 (the "Agreement") does hereby sell, transfer, assign, set over and convey to [_____] as the Purchaser under the Agreement, without recourse, but subject to the terms of the Agreement, all right, title and interest of, in and to the Mortgage Loans listed on the Mortgage Loan Schedule attached to the Agreement, together with the Mortgage Files and all rights and obligations arising under the documents contained therein. The ownership of each Mortgage Note, Mortgage and the contents of the Mortgage File is vested in the Purchaser.

The Purchaser accepts the Mortgage Loans listed on the Mortgage Loan Schedule. Notwithstanding the foregoing, the Purchaser does not waive any rights or remedies it may have under the Agreement.

Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Agreement.

[Signature Page Follows]

FLAGSTAR BANK, FSB,  Seller

By: _____
    Name:
    Title:

Agreed and Acknowledged:

[_____], Purchaser

By: _____
    Name:
    Title:

**EXHIBIT D**
FLAGSTAR BANK, FSB
AFFIDAVIT OF LOST ORIGINAL NOTE

LOAN:

COUNTY OF OAKLAND
STATE OF MICHIGAN

_____ of Flagstar Bank, FSB ("Flagstar") being duly sworn deposes and says that the Security described below was lost, stolen, or misplaced from Flagstar's premises and that a diligent search of Flagstar's premises has failed to locate the Security.

The Security is described as follows:

**Name and address of borrower(s):**
**Property Address:**
**Lender/Creditor:**
**Original Note Date:**
**Note Amount: $**
**Interest Rate:**          **%**

This Affidavit shall replace the Security and serve as proof of the indebtedness evidenced by the Security until such time as the Security is located and/or the indebtedness is satisfied.  Flagstar agrees to replace this Affidavit with the original Security should it at any time be found by Flagstar or come into Flagstar's possession or control and promptly deliver it to

_____.


Flagstar agrees to indemnify _____or its assigns ("Purchaser") for actual damages resulting to Purchaser as a direct consequence of the Security being lost, mislaid or destroyed.
Flagstar Bank, FSB

By:_____


Sworn and subscribed before me this _____ day of _____, _____


Notary Signature: _____

D-1

**EXHIBIT E**

MORTGAGE LOAN SCHEDULE FIELDS

With respect to each individual Mortgage Loan:

1. Mortgage Loan identifying number
2. Mortgagor's name
3. The lien type
4. The street address of the Mortgaged Property including the city, state and zip code
5. The origination date of the Mortgage Loan
6. The principal balance of the Mortgage Loan as of the Cut-off Date
7. The next Due Date of the Mortgage Loan
8. The Purchase Price Percentage
9. A code indicating whether or not the Mortgage Loan has Private Mortgage Insurance
10. Litigation Status
11. Mortgage Insurance Coverage Percentage

## EXHIBIT F

### FORM OF POWER OF ATTORNEY

**SPECIAL AND LIMITED POWER OF ATTORNEY**
**from Flagstar Bank, FSB, as Seller, in favor of Vericrest Financial, Inc.,**
**on behalf of [                    ], as Purchaser**

KNOW ALL MEN BY THESE PRESENTS:

WHEREAS, the Mortgage Loan Purchase and Warranties Agreement dated as of August __, 2010 (the "Purchase Agreement") between **Flagstar Bank, FSB**, as seller (the "Seller"), [                    ], as the purchaser (the "Purchaser"), and Vericrest Financial, Inc. as successor servicer (the "Successor Servicer"), provides for the sale and transfer by Seller to Purchaser of certain Mortgage Loans [and REO Properties] as defined in such Purchase Agreement (the "Mortgage Loans"). Initially capitalized terms used and not otherwise defined herein shall have the respective meanings ascribed to such terms in the Purchase Agreement.  For purposes herein, the term "REO Property" shall include any REO property resulting from the default, collection, liquidation or foreclosure of any Mortgage Loan purchased pursuant to the Purchase Agreement.

WHEREAS, in connection with the Purchase Agreement and for the purpose of transferring and assigning the Mortgage Loans to the Purchaser and servicing the Mortgage Loans by or on behalf of the Purchaser, the Seller has agreed to appoint the Successor Servicer, on behalf of the Purchaser, and any officer or agent thereof, with full power of substitution, as its true and lawful attorney-in-fact with full power and authority in the place and stead of such entity and in the name of such entity or in its own name, for the purpose of carrying out the terms of the Purchase Agreement, to take any and all appropriate action and to execute or endorse any and all documents and instruments which the Successor Servicer may deem necessary or desirable to accomplish the purposes of the Purchase Agreement;

NOW, THEREFORE, **Flagstar Bank, FSB**, as Seller, acting through its duly authorized officer _ _____, as the _____ of Seller, DOES HEREBY:

1.  constitute and appoint **Vericrest Financial, Inc.** and each authorized officer or agent thereof, (which are referred to herein collectively as "Attorneys" and individually as "Attorney"), individually, as a true and lawful attorney with full power and authority and with sole and absolute discretion (but only for the purposes set forth herein) for and in the place and stead of Seller and in the name of Seller or in the Attorneys own name:

(a) to endorse, negotiate, deliver and deposit any check, draft, money order or other form of payment instrument payable to Seller and tendered as payment on or proceeds from any Mortgage Asset;

(b) to endorse, execute, seal, acknowledge, deliver, file and/or record (including with the appropriate public officials) the following:

(1) any documents or instruments (i) to endorse any promissory note for any Mortgage Loan to the Purchaser or its successors or assigns, (ii) to assign any Mortgage or any other security instrument related to any Mortgage Loan to the Purchaser or its successors or assigns, (iii) to maintain and protect the validity, priority or value of the lien and security interest created by any Mortgage on the related Mortgaged Property, any REO Property, and

F-1

any other security instrument for any Mortgage Asset, including without limitation the notification of any property tax authorities and any casualty or mortgage insurers with respect to such Mortgage Asset, (iv) to represent the interests of and act as the lender with respect to any Mortgage Loan in connection with the default, collection, liquidation or foreclosure of any such Mortgage Loan and the related Mortgaged Property or any REO Property, the bankruptcy of the related mortgagor or any lawsuit or legal proceeding involving the related Mortgaged Property or REO Property, (v) to appoint any successor or substitute trustee under a mortgage that consists of a deed of trust, and (vi) to provide notice to any mortgagor of the transfer of the servicing of any Mortgage Loan, including any goodbye letters;

(2) any modifications, waivers, assumptions, amendments or agreements for subordination or forbearance of any mortgage, promissory note or any other documents related to any Mortgage Asset; and

(3) any instruments of satisfaction or cancellation, or of partial or full release or discharge, and all other comparable instruments with respect to any Mortgage, any related Mortgaged Property, or any REO property; and

(c) to institute and pursue foreclosure proceedings or obtain a deed in lieu of foreclosure so as to effect ownership of any Mortgaged Property in the name or on behalf of the Purchaser or its successors and assigns, to manage, maintain, sell and otherwise liquidate any REO Property, and to endorse, execute, seal, acknowledge, deliver, file and/or record (including with the appropriate public officials) any deed, certificate of foreclosure sale and collateral assignment for the ownership of any such REO Property and any mortgage or any other security instrument for the pledge of any REO Property; and

2. further authorize and empower each such Attorney, for and in the place and stead of Principal and in the name of Seller: (a) to file and record this Special and Limited Power of Attorney with the appropriate public officials; and (b) to appoint and name such substitute attorneys with all authority and powers hereunder, provided that such substitute attorneys are duly elected and qualified officers of the Seller.

Seller covenants and grants to the Attorneys full authority and power to execute any documents and instruments and to do and perform any act that is necessary or appropriate to effect the intent and purposes of the foregoing authority and powers hereunder. Seller further ratifies and confirms each act that the Attorneys shall lawfully do or cause to be done in accordance with the authority and powers granted hereunder. The foregoing authority and powers shall not be deemed breached by reason of any action or omission of any Attorneys appointed hereunder. Seller covenants and agrees that, from time to time at the request of the Successor Servicer, Seller shall execute instruments confirming all of the foregoing authority and powers of any Attorneys.

Without actual notice to the contrary, any person may rely on authorities and powers granted hereunder and any actions of the Attorneys taken pursuant to such authorities and powers as the valid, binding and enforceable actions of Seller and that all conditions hereunder to the exercise of such actions by the Attorneys have been completed and are satisfied. No person to whom this Power of Attorney is presented, as authority for Attorney to take any action or actions contemplated hereby, shall be required to inquire into or seek confirmation from Seller as to the authority of Attorney to take any action described herein, or as to the existence of or fulfillment of any condition to this Power of Attorney, which is intended to grant to Attorney unconditionally the authority to take and perform the actions contemplated herein, and Seller irrevocably waives any right to commence any suit or action, in law or equity, against

any person or entity which acts in reliance upon or acknowledges the authority granted under this Power of Attorney.

This power of attorney is not revocable by Seller.

[Signature Page Follows Next]

IN WITNESS WHEREOF, Principal has caused this SPECIAL AND LIMITED POWER OF ATTORNEY to be signed by its duly authorized officer as of August __, 2010.

**Flagstar Bank, FSB, as Seller**

By:_____

Name:  [Seller Officer Name]_____

_____

Witness

Title:   [Seller Officer Title]_____

**ACKNOWLEDGMENT**

STATE OF _____        §
                                                     §
COUNTY OF _____        §

On the ___ day of August, 2010, before me personally appeared the above-named _____[Seller Officer Name]_, on behalf of **Flagstar Bank, FSB** to me known and known by me to be the [Seller Officer Title] of said company, and acknowledged said instrument so executed to be his free act and deed in said capacity and the free act and deed of said company.

My commission expires:

_____                              Notary Public

F-3

**EXHIBIT G**

**INTERIM SERVICING AGREEMENT**

Between

_____

Owner,

And

**FLAGSTAR BANK, FSB**

Servicer

RESIDENTIAL MORTGAGE LOANS

Dated as of November [12], 2010

THIS INTERIM SERVICING AGREEMENT, dated November [12], 2010, between _____ _____ ("Owner"), having an office at 2711 North Haskell Ave., Suite 1700, Dallas, TX 75204 and FLAGSTAR BANK, FSB ("Servicer"), having an office at 5151 Corporate Drive, Troy, Michigan 48098 (this "Agreement").

## W I T N E S S E T H :

WHEREAS, the mortgage loans (the "Mortgage Loans") identified on the Mortgage Loan Schedule annexed hereto as Exhibit A have been sold to Owner pursuant to the terms and conditions of a Mortgage Loan Purchase and Warranties Agreement (the "Purchase Agreement") entered into between Owner and Servicer dated as of [      ]; and

WHEREAS, Servicer has agreed to service or cause a sub-servicer to service each Mortgage Loan on behalf of Owner from the Closing Date (capitalized words not otherwise defined herein shall have the meanings specified in the Purchase Agreement), to and until the Servicing Transfer Date, and the parties hereto desire to provide the mechanics of such interim servicing by Servicer; and

WHEREAS, Owner and [Wells Fargo Bank, N.A.] ("Buyer") have concurrently herewith entered into that certain Master Repurchase Agreement (the "MRA") relating to the Mortgage Loans;

NOW, THEREFORE, in consideration of the mutual covenants made herein, and for other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, the parties hereto hereby agree as follows:

## SECTION 1.    INTERIM SERVICING.

(a)    Servicer (and/or its sub-servicer) shall service and administer the Mortgage Loans for and on behalf of Owner for the benefit of Buyer, from the Closing Date to and until the first day of the calendar month occurring not less than 17 days after the Closing Date, but not later than January 1, 2011 or until such Mortgage Loan becomes an REO Property and is transferred to Owner (the "Servicing Transfer Date"). Servicer, as an independent contract servicer, shall service and administer and/or cause a sub-servicer to service and administer the Mortgage Loans on an interim basis in accordance with this Agreement and normal and prudent practices in the mortgage loan servicing industry for a portfolio of like mortgage loans (the "Servicing Standard"). In fulfilling its obligations under this Agreement, Servicer may cause a sub-servicer to service and/or administer the Mortgage Loans on behalf of the Owner. In furtherance of the foregoing, and not in limitation thereof, Servicer shall (i) comply with all applicable federal, state and local laws and regulations relating to the Mortgage Loans, (ii) maintain all state and federal licenses necessary for it to perform its servicing responsibilities hereunder and (iii) not impair the rights of Buyer in any Mortgage Loan or any payment thereunder. Servicer hereby acknowledges that Buyer has an interest in the Mortgage Loans, and, upon receipt of written notice from Buyer that an Event of Default (as defined in the MRA) under the MRA has occurred, Servicer shall follow the instructions of Buyer with respect to the Mortgage Loans and any related payments with respect thereto and shall deliver to Buyer any information with respect to the Mortgage Loans reasonably requested by Buyer.

(b)     Servicer shall perform or cause a sub-servicer to perform the following services in connection with each Mortgage Loan:

(i)     In accordance with any applicable laws and regulations, Servicer shall use all reasonable efforts to collect all payments due under the terms of the Mortgage Loans as such payments become due.

(ii)     Servicer shall hold all funds collected and received pursuant to the Mortgage Loans for the benefit of Owner and Buyer.  Further, Servicer acknowledges that the escrow accounts are held for the benefit of Owner on behalf of the mortgagors (the "Mortgagors") of the Mortgage Loans.

(iii)     Until the Servicing Transfer Date, Servicer shall remit payments of principal and interest and all other collections received by Servicer related to applicable Mortgage Loan by the last business day of each month (the "Determination Date") to Owner on the 5th business day of each month following the applicable Determination Date (a "Remittance Date").

(iv)     With respect to the Mortgage Loans then serviced by Servicer pursuant to this Agreement, Servicer shall deliver to the Owner and Buyer on the 5th business day following each Determination Date the following reports, except for the report found in Section 1(b)(iv)(b) which shall be delivered on the 2nd business day following each Determination Date:

(a)     Remittance report on an actual/actual basis in an electronic format mutually agreed upon between the Servicer and the Owner;

(b)     Trial balance which includes account number and selected data fields mutually agreed upon between the Servicer and the Owner ("Trial Balance File") for the immediately preceding month;

(c)     Detailed monthly cash receipt reports, by loan, showing total cash received for each loan's principal, interest, curtailments, escrow balance, and unapplied amounts (as applicable);

(d)     Delinquency summary report to include information as reasonably requested and mutually agreed between Servicer and the Owner.

(v)     Servicer shall be responsible for making any and all reasonable servicing advances, provided, that, Servicer shall be reimbursed for such reasonable and documented servicing advances which were made after September 30, 2010 (the "Cut-off Date") on the Servicing Transfer Date if not previously collected from the related Mortgagors.

(vi)   Servicer shall not enter into any satisfaction, cancellation, assignment, modification, sale, forbearance, partial or full release or discharge with respect to any Mortgage Loan, but shall notify Owner on the Servicing Transfer Date of any such requests received during the Interim Servicing Period.  Servicer may enter into any satisfaction, cancellation, assignment, modification, sale, forbearance, partial or full release or discharge with respect to any Mortgage Loan if expressly authorized in writing by Owner. Notwithstanding the foregoing, Servicer may continue its servicing activities for any existing sales or modifications initiated prior to the Closing Date in accordance with the Servicing Standard.

(vii)   In the event a Mortgage Loan requires foreclosure, Servicer shall notify Owner and Buyer of Servicer's recommendation to foreclose, provide documentation necessary for Owner to review the account, and obtain Owner's written consent to foreclosure prior to initiating any such action. Notwithstanding the foregoing, Servicer may continue its servicing activities for any existing foreclosure activities prior to the Closing Date in accordance with the Servicing Standard.

(viii)   If such consent is received, Servicer will initiate foreclosure proceedings in Owner's name or its designee, for which Owner shall provide a power of attorney.  Servicer shall notify Buyer upon the commencement of any such foreclosure proceedings.  Servicer agrees to engage a foreclosure attorney of Owner's choosing.   Owner and not Servicer shall be solely and exclusively liable for the payment of any and all attorneys' fees incurred in connection with any such foreclosure proceedings.

(ix)   If the Mortgage Loan becomes REO Property after the Cut-off Date, but prior to the Servicing Transfer Date, the Servicer shall, immediately upon receipt, provide (upon having the legal authority to do so, e.g., after the expiration of any statutory redemption period) the Owner or its designee, all quitclaim deeds executed by the Servicer to the Owner, or Owner's designee, in a form recordable in the jurisdiction in which the REO Property is located and Servicer shall deliver to the Buyer's designee all documents contained in the REO File.  The Owner will be obligated to pay for all taxes associated with the preparation, execution and filing of any quitclaim deeds.  With respect to any such REO Property, neither Owner nor Servicer shall take any action or permit the taking of any action that would have a material adverse effect on the direct interests of the Owner therein or the indirect interests of the Buyer therein, without obtaining the prior written consent of Buyer to such action.

(c)   For fees and servicing advances due and owing to Servicer for the period from the Cut-off Date through and including the Servicing Transfer Date, (a) Owner shall pay to Servicer a monthly servicing fee equal to $10 per Mortgage Loan per month (prorated for partial months), and (b) on each Remittance Date, Servicer shall be entitled to retain and deduct from the remittance of collections on the Mortgage Loans any (1) reasonable and documented

unreimbursed servicing advances that were incurred after the Cut-off Date, (2) all late fees and other similar fees collected on the Mortgage Loans, and (3) any servicing fee due as of the applicable Determination Date; provided, however, Owner or the Successor Servicer set forth in Section 10 below shall have the right to audit any such sums retained by Servicer and Servicer shall reasonably cooperate with the requests of Owner or successor servicer in connection with any such audit (and, if such audit discloses that Servicer retained any sums which Servicer is not entitled to retain hereunder, Servicer shall promptly pay and remit such sums to Owner).  In addition, Servicer shall provide written notice to Owner and Buyer for any servicing advances in excess of $5,000 prior to making such servicing advance(s).  No other termination fees shall be due or payable.  Servicer acknowledges that Buyer shall not be responsible for the payment of any fees owed to Servicer hereunder.

(d)     Servicer shall cooperate as commercially reasonable with Owner and take any and all necessary actions to effect the transfer the servicing of the Mortgage Loans to a successor servicer designated by Owner and Buyer including, without limitation, the following:

(i)     Five (5) business days following the Closing Date, Servicer shall deliver to Owner a preliminary servicing report (the "Preliminary Servicing Report") – in an electronic form - detailing the account balances, escrow balances, collections history, and any other information as mutually agreed between Servicer and Owner. Servicer shall deliver another Preliminary Servicing Report to Owner two (2) business days prior to the Servicing Transfer date.

(ii)    Five (5) business days following the Servicing Transfer Date, Servicer shall deliver to Owner a servicing report (the "Servicing Report") – in an electronic form – detailing the account balances, escrow balances, collections history, and any other information reasonably requested by Owner so Owner may prepare for boarding the Mortgage Loans onto its own servicing system.  Servicer shall cause the final Servicing Report to be produced reflecting all collections including interest and principal on the Mortgage Loans during the period from the Cut-off Date through the Servicing Transfer Date.

(iii)   Two (2) business days after the Servicing Transfer Date, Servicer shall deliver to Owner – in an electronic form – a trial balance file mutually agreed upon between the Servicer and the Owner.

(iv)    Servicer shall mail, on or before the date required by law, all Internal Revenue Service (" IRS") forms, including, without limitation, form numbers 1099, 1099A or 1098, to all persons or entities entitled to receive such forms for the period from January 1, 2010 until the Servicing Transfer Date.  Owner shall make any such IRS filings for the period after the Servicing Transfer Date.

(v)     No more than three (3) Business Days after the Servicing Transfer Date, Servicer shall turn over to the custodian designated by Owner, at a location specified by Owner, all of the original Mortgage Files (as defined in the

Purchase Agreement) and to the successor servicer, the servicing files in Servicer's possession.

(vi)     Servicer shall comply with and conform to all current federal, state and local laws, rules and regulations including, but not limited to, issuance and mailing of "goodbye/hello letters" to all mortgagors and the issuance of the "Short Year Statements" to mortgagors, escrows are collected in accordance with escrow accounting procedures under the Real Estate Settlement Procedures Act.    Servicer shall provide Owner with a representative sample letter for each of the above mentioned notices.

(vii)    Following the Servicing Transfer Date, Servicer shall not process and apply payments, but rather shall endorse and forward to the account specified in Section 5 any payments received by Servicer on such Mortgage Loans on a weekly basis following Servicer's receipt of such payments. On a weekly basis, Servicer shall deliver such payments to the account specified in Section 5 via overnight courier for a period of thirty (30) days following the Servicing Transfer Date and thereafter via U.S. mail, first class delivery, and, concurrently with the delivery of such payments, Servicer shall provide written notice thereof to Buyer.

(e)     On the Servicing Transfer Date, Servicer shall use its commercially reasonable efforts to promptly transfer the Mortgage Loans to the successor servicer designated by Owner and Buyer in such a manner as is agreed to between Owner and Servicer.   If unforeseen circumstances necessitate that the Servicer continue to service the Mortgage Loans after January 1, 2011, Owner and Buyer shall each have the right, independently, to audit the Servicer's operations as related to the Mortgage Loans.

## SECTION 2.     REPRESENTATIONS AND WARRANTIES OF OWNER.

(a)     Owner has full power and authority to execute, deliver and perform under this Agreement and to consummate the transactions set forth herein.  This Agreement has been duly executed and delivered by Owner and constitutes the valid and legally binding obligation of Owner enforceable against Owner in accordance with its respective terms.

(b)     No material consent, approval, order or authorization of, or declaration, filing or registration with, any governmental entity is required to be obtained or made by Owner in connection with the execution, delivery or performance by Owner of this Agreement, or the consummation by it of the transactions contemplated hereby.

## SECTION 3.     REPRESENTATIONS AND WARRANTIES OF SERVICER.

(a)     Servicer has full power and authority to execute, deliver and perform under this Agreement and to consummate the transactions set forth herein.  This Agreement has been duly executed and delivered by Servicer and constitutes the valid and legally binding obligation of Servicer enforceable against Servicer in accordance with its respective terms.

(b)      No material consent, approval, order or authorization of, or declaration, filing or registration with, any governmental entity is required to be obtained or made by Servicer in connection with the execution, delivery or performance by Servicer of this Agreement, or the consummation by it of the transactions contemplated hereby.

(c)      Servicer has and maintains all licenses and registrations required to properly and legally servicing the Mortgage Loans for the duration of the Interim Servicing Period.

**SECTION 4.**      <u>Costs</u>.  Each party shall bear its own costs and expenses except as provided herein.

**SECTION 5.**      <u>**Deliveries to Owner and Bank Wire Instructions**</u>.  In connection with the transfer of servicing pursuant to the Purchase Agreement, Servicer shall make all physical deliveries of the Loan Servicing Data, the loan servicing files, any loan payments after the Servicing Transfer Date, reports and data files and any other documentation relating to the servicing transfer to the Successor Servicer at the following address:

> Vericrest Financial, Inc.
> 715 South Metropolitan Avenue
> Oklahoma City, Oklahoma 73108
> Attention: Virginia Halterman

Any amounts to be remitted to Owner shall be made by wire transfer of immediately available funds to the following bank account **[THIS SHOULD BE THE COLLECTION ACCOUNT]**:

| | |
|---|---|
| Bank Name: | [JPMorgan Chase Bank] |
| ABA #: | [          ] |
| Account Name: | Vericrest Financial, Inc. fbo [          ] |
| Account #: | [          ] |
| Reference: | Flagstar/Lone Star |

**SECTION 6.**   **Indemnification by the Servicer.**   Servicer shall indemnify and hold the Owner and Buyer and their respective officers, directors, shareholders, employees, agents, attorneys, successors and any permitted assigns harmless from, and shall reimburse each of them for, all losses, incurred by or asserted against any of such individuals or entities before, on or after the Transfer Date which result from (i) any breach of the representations and warranties made by the Servicer in this Agreement, (ii) any failure by Servicer, or its sub-servicer on its behalf, to perform its obligations under this Agreement, or (iii) any failure by Servicer, or its sub-servicer on its behalf, to service a Mortgage Loan prior to the Servicing Transfer Date in accordance with the Servicing Standard.

**SECTION 7.**   **Counterparts.**   This Agreement may be executed in one or more counterparts and by the different parties hereto on separate counterparts, each of which, when so executed, shall be deemed to be an original; such counterparts, together, shall constitute one and the same agreement.

**SECTION 8.**   **Amendment.**   This Agreement may be amended from time to time by Servicer and Owner by written agreement signed by Servicer and Owner and acknowledged by Buyer.

**SECTION 9.**   **Governing Law.**   This Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to agreements to be performed in such state without regard to any conflicts of laws principles, except to the extent preempted by Federal law.

**SECTION 10.**   **Notices.**   Any notices or other communications permitted or required hereunder shall be in writing and shall be deemed conclusively to have been given when delivered to:

(a)   in the case of Owner, its Successor Servicer, Vericrest Financial, Inc. at 715 Metropolitan Blvd., Oklahoma City, OK 73108, Attention: President, with a copy to Owner's General Counsel, at 2711 North Haskell Avenue, Suite 1700, Dallas, TX 75204 or such other address as may hereafter be furnished to Servicer in writing by Owner,

(b)   in the case of Servicer, at [                    ] Attention: [          ] with a copy to Owner's Senior Legal Counsel, at the same address or such other address as may be furnished to Servicer in writing by Owner.

(c)   In the case of Buyer, at [          ]

**SECTION 11.**   **Severability Provisions.**   If any one or more of the covenants, agreements, provisions or terms of this Agreement shall be for any reason whatsoever held invalid, the invalidity of any such covenant, agreement, provision or term of this Agreement shall in no way affect the validity or enforceability of the other provisions of this Agreement, provided, however, that if the invalidity of any covenant, agreement or provision shall deprive any party of the economic benefit intended to be conferred by this Agreement, the parties shall negotiate in good

faith to develop a structure the economic effect of which is as nearly as possible the same as the economic effect of this Agreement.

**SECTION 12.    Exhibits.**  The exhibits to this Agreement are hereby incorporated and made a part hereof and are an integral part of this Agreement.

**SECTION 13.    General Interpretive Principles.**  For purposes of this Agreement, except as otherwise expressly provided or unless the context otherwise requires:

(a)    the terms defined in this Agreement have the meanings assigned to them in this Agreement or in the Mortgage Loan Purchase and Sale Agreement, as applicable, and include the plural as well as the singular;

(b)    terms not otherwise defined herein have the meanings assigned to them in accordance with generally accepted accounting principles;

(c)    the term "include" or "including" shall mean without limitation by reason of enumeration.

**SECTION 14.    Reproduction of Documents.**  This Agreement and all documents relating thereto including, without limitation, (a) consents, waivers and modifications which may hereafter be executed, (b) documents received by any party at the Closing, and (c) financial statements, certificates and other information previously or hereafter furnished, may be reproduced by any photographic, photostatic, microfilm, micro-card, miniature photographic or other similar process.  The parties agree that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding, whether or not the original is in existence and whether or not such reproduction was made by a party in the regular course of business, and that any enlargement, facsimile or further reproduction of such reproduction shall likewise be admissible in evidence.

**SECTION 15.    Successors and Assigns.**  This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective successors and assigns.  Owner may assign this Agreement, in whole or in part, to one or more affiliates of Owner without Servicer's prior written consent.  Servicer shall not assign this Agreement.

**SECTION 16.    Termination.**  Except as otherwise set forth herein, the respective obligations and responsibilities of Servicer shall terminate with respect to each Mortgage Loan on the earlier to occur of: (i) the later of the final payment or other liquidation (or any advance with respect thereto) of such Mortgage Loan or the disposition of all REO Property and the remittance of all funds due hereunder; or (ii) the date on which Servicer transfers servicing of such Mortgage Loan to Owner or Owner's designee.  In addition, Buyer shall have the right to terminate this Agreement upon the occurrence and during the continuance of an Event of Default under the MRA.  Upon any termination of this Agreement, Servicer shall reasonably cooperate with Owner and/or Buyer, as applicable, in transferring the servicing of the Mortgage Loans to a servicer approved by Buyer.  In addition, in the event that Servicer or any subservicer fails to service the

Mortgage Loans in accordance with the Servicing Standard, Servicer shall transfer servicing of the Mortgage Loans to a Buyer-approved servicer within thirty (30) days after such default.

**SECTION 17.     Third Party Beneficiaries.** Servicer and Owner acknowledge and agree that Buyer is an intended third party beneficiary of this Agreement.  Except for the foregoing, there are no third party beneficiaries of this Agreement.

[Signature Page Follows]

IN WITNESS WHEREOF, this Interim Servicing Agreement has been executed as of the day and year first above written.

_____, as Owner

By: _____
Name: _____
Title: _____

**FLAGSTAR BANK, FSB**, as Servicer

By: _____
Name: _____
Title: _____

Acknowledged and Agreed:

**WELLS FARGO BANK, N.A.**, as Buyer

By: _____
Name: _____
Title: _____

**EXHIBIT A**

MORTGAGE LOAN SCHEDULE

**EXHIBIT H**

**REO FILES**

<u>REO File Requirements</u>.  For each REO Property, the Seller shall deliver an REO File to the Purchaser that contains each of the following documents:

(a)     An original, executed quitclaim deed from the Seller to the Purchaser in a form recordable in the jurisdiction in which the REO Property is located;

(b)     Information on the current assigned agent so the Purchaser can gain access to the REO Property;

(c)     Contact details related to the attorney working on any eviction proceedings related to the REO Property, if applicable;

(d)     Any documents related to an ongoing eviction proceeding with respect to the REO Property;

(e)     Any property management agreements and listing agreements in force as of the Closing Date with respect to the REO Property, if any; and

(f)     Any other document reasonably requested by the Purchaser, to the extent available.

**CIVIL CASE INFORMATION SHEET**

CAUSE NUMBER *(FOR CLERK USE ONLY):* _____   COURT *(FOR CLERK USE ONLY):* _____

STYLED __LSF7 NPL V Trust and LSF7 Bermuda NPL V Trust  v. Flagstar Bank, FSB_____
(e.g., John Smith v. All American Insurance Co; In re Mary Ann Jones; In the Matter of the Estate of George Jackson)

A civil case information sheet must be completed and submitted when an original petition or application is filed to initiate a new civil, family law, probate, or mental health case or when a post-judgment petition for modification or motion for enforcement is filed in a family law case. The information should be the best available at the time of filing. This sheet, approved by the Texas Judicial Council, is intended to collect information that will be used for statistical purposes only. It neither replaces nor supplements the filings or service of pleading or other documents as required by law or rule. The sheet does not constitute a discovery request, response, or supplementation, and it is not admissible at trial.

## 1. Contact information for person completing case information sheet:

| Contact information | Names of parties in case: | Person or entity completing sheet is: |
|---|---|---|
| **Name:** Adam Q. Voyles  **Email:** adam@lubelvoyles.com | **Plaintiff(s)/Petitioner(s):** LSF7 NPL V Trust and LSF7 Bermuda NPL V Trust | ☒ Attorney for Plaintiff/Petitioner  ☐ *Pro Se* Plaintiff/Petitioner  ☐ Title IV-D Agency  ☐ Other: _____ |
| **Address:** 5020 Montrose Blvd., Ste. 800  **Telephone:** 713-284-5200 | | Additional Parties in Child Support Case: |
| **City/State/Zip:** Houston, TX 77006  **Fax:** 713-284-5250 | **Defendant(s)/Respondent(s):** Flagstar Bank, FSB | Custodial Parent: _____  Non-Custodial Parent: _____ |
| **Signature:**  **State Bar No:** 24003121 | [Attach additional page as necessary to list all parties] | Presumed Father: _____ |

## 2. Indicate case type, or identify the most important issue in the case *(select only 1):*

### Civil

**Contract**

*Debt/Contract*
☐ Consumer/DTPA
☒ Debt/Contract
☐ Fraud/Misrepresentation
☐ Other Debt/Contract:

*Foreclosure*
☐ Home Equity—Expedited
☐ Other Foreclosure
☐ Franchise
☐ Insurance
☐ Landlord/Tenant
☐ Non-Competition
☐ Partnership
☐ Other Contract:

**Injury or Damage**
☐ Assault/Battery
☐ Construction
☐ Defamation
*Malpractice*
☐ Accounting
☐ Legal
☐ Medical
☐ Other Professional Liability:
☐ Motor Vehicle Accident
☐ Premises
*Product Liability*
☐ Asbestos/Silica
☐ Other Product Liability List Product:
☐ Other Injury or Damage:

**Real Property**
☐ Eminent Domain/ Condemnation
☐ Partition
☐ Quiet Title
☐ Trespass to Try Title
☐ Other Property:

**Related to Criminal Matters**
☐ Expunction
☐ Judgment Nisi
☐ Non-Disclosure
☐ Seizure/Forfeiture
☐ Writ of Habeas Corpus— Pre-indictment
☐ Other:

**Employment**
☐ Discrimination
☐ Retaliation
☐ Termination
☐ Workers' Compensation
☐ Other Employment:

**Other Civil**
☐ Administrative Appeal
☐ Antitrust/Unfair Competition
☐ Code Violations
☐ Foreign Judgment
☐ Intellectual Property
☐ Lawyer Discipline
☐ Perpetuate Testimony
☐ Securities/Stock
☐ Tortious Interference
☐ Other:

### Family Law

**Post-judgment Actions (non-Title IV-D)**
☐ Enforcement
☐ Modification—Custody
☐ Modification—Other

**Marriage Relationship**
☐ Annulment
☐ Declare Marriage Void
*Divorce*
☐ With Children
☐ No Children

**Title IV-D**
☐ Enforcement/Modification
☐ Paternity
☐ Reciprocals (UIFSA)
☐ Support Order

**Other Family Law**
☐ Enforce Foreign Judgment
☐ Habeas Corpus
☐ Name Change
☐ Protective Order
☐ Removal of Disabilities of Minority
☐ Other:

**Parent-Child Relationship**
☐ Adoption/Adoption with Termination
☐ Child Protection
☐ Child Support
☐ Custody or Visitation
☐ Gestational Parenting
☐ Grandparent Access
☐ Parentage/Paternity
☐ Termination of Parental Rights
☐ Other Parent-Child:

**Tax**
☐ Tax Appraisal
☐ Tax Delinquency
☐ Other Tax

### Probate & Mental Health

*Probate/Wills/Intestate Administration*
☐ Dependent Administration
☐ Independent Administration
☐ Other Estate Proceedings

☐ Guardianship—Adult
☐ Guardianship—Minor
☐ Mental Health
☐ Other:

## 3. Indicate procedure or remedy, if applicable *(may select more than 1):*

☐ Appeal from Municipal or Justice Court
☐ Arbitration-related
☐ Attachment
☐ Bill of Review
☐ Certiorari
☐ Class Action
☐ Declaratory Judgment
☐ Garnishment
☐ Interpleader
☐ License
☐ Mandamus
☐ Post-judgment
☐ Prejudgment Remedy
☐ Protective Order
☐ Receiver
☐ Sequestration
☐ Temporary Restraining Order/Injunction
☐ Turnover

# FORM NO. 353-3 - CITATION
# THE STATE OF TEXAS

**To:**

**FLAGSTAR BANK FSB**
**5151 CORPORATE DRIVE**
**TROY MI 48098**

GREETINGS:

You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10 o'clock a.m. of the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. Your answer should be addressed to the clerk of the **191st District Court** at 600 Commerce Street, Ste. 101, Dallas, Texas 75202.

Said Plaintiffs being **LSF7 NPL V TRUST, ETAL**

Filed in said Court **25th day of April, 2012** against

**FLAGSTAR BANK FSB**

For Suit, said suit being numbered **DC-12-04607,** the nature of which demand is as follows:
Suit on **CNTR CNSMR COM DEBT** etc. as shown on said petition , a copy of which accompanies this citation. If this citation is not served, it shall be returned unexecuted.

WITNESS: GARY FITZSIMMONS, Clerk of the District Courts of Dallas, County Texas.
Given under my hand and the Seal of said Court at office this 26th day of April, 2012.

ATTEST: GARY FITZSIMMONS, Clerk of the District Courts of Dallas, County, Texas

By _____ , Deputy
    RITA RODGERS



---

**ATTY**

# CITATION

## DC-12-04607-J

**LSF7 NPL V TRUST, et al**
**vs.**
**FLAGSTAR BANK FSB**

ISSUED THIS
**26th day of April, 2012**

GARY FITZSIMMONS
Clerk District Courts,
Dallas County, Texas

By: RITA RODGERS, Deputy

---

**Attorney for Plaintiffs**
Adam Voyles
3800 Buffalo Speedway
5th Floor
Houston Tx 77098
713-650-1200

---

DALLAS COUNTY CONSTABLE

FEES
PAID

FEES NOT
PAID